UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
ANN CARDENAS,
ALBERT ARONOV,
PRZEMYSLAW (PETE) SZUMILO,
JOHN TALAVERA, and
GABRIEL VELEZ,

                        Plaintiffs,                      **COMPLAINT**
                                                            Jury Demand

           - against -

CITY OF NEW YORK,
SERGEANT DAVID JOHN,
LIEUTENANT AKHTAR,
SERGEANT MERCADO,
SERGEANT TARA KING, and
P.O. ANGEL COLON,
being sued in their individual and professional capacities,

                        Defendants.
--------------------------------------------------------------------X

       Plaintiffs ANN CARDENAS, ALBERT ARONOV, PRZEMYSLAW (PETE) SZUMILO, JOHN TALAVERA, and GABRIEL VELEZ, by their attorneys CRONIN & BYCZEK, LLP, complaining of Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, each being sued in their individual and official capacities as employees of the CITY, allege, upon information and belief, that:

## NATURE OF ACTION

1. This is an action for injunctive and equitable relief and money damages on behalf of Plaintiffs ANN CARDENAS, ALBERT ARONOV, PRZEMYSLAW (PETE) SZUMILO, JOHN TALAVERA, and GABRIEL VELEZ ("Plaintiffs") who were, and who are prospectively deprived of their statutory and constitutional rights as a result of the

1

Defendants' policies and practices of discrimination based upon their race, gender, national origin, ethnicity and religion, hostile work environment and retaliation. Said policies were implemented under color of law. Plaintiffs also allege that they were caused to be injured due to the intentional acts, including, but not limited to, assault and battery and disregard of employees who violated a rule, law or regulation.

## JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343 and 2202 to secure protection of and to redress deprivation of rights secured by:

   a. Title VII of the Civil Rights Act of 1964 (hereinafter referred to as "Title VII") providing for injunctive and other relief against discrimination in employment on the basis of race;

   b. The Civil Rights Act of 1866, 42 U.S.C. § 1981, providing for the protection of all person's right to make and enforce contracts under the color of state law;

   c. The Civil Rights Act of 1871, 42 U.S.C. § 1983, providing for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law;

   d. The unlawful employment practices, violations of plaintiff's civil rights and tortious acts complained of herein were committed within the Eastern District of New York.

3. The pendent jurisdiction of the federal district court is invoked with respect to the plaintiff's claims under New York State Executive Law § 296; and New York City Administrative Code § 8-502 and § 8-101 *et. seq.*, pursuant to 28 U.S.C. § 1367, because the entire action before the court comprises one constitutional and civil rights case, and the claims arise out

of the same common nucleus of facts and are such that the Plaintiffs would ordinarily be expected to try them in one judicial proceeding.

## **PLAINTIFFS**

4.  Plaintiff ANN CARDENAS ("CARDENAS") is a Hispanic female citizen of the United States of America of Puerto Rican descent and is over twenty-one (21) years of age and is an employee of Defendant CITY OF NEW YORK (hereinafter referred to as the "CITY") more specifically the NEW YORK CITY POLICE DEPARTMENT ("NYPD"). For the purposes of this litigation, NYPD may be used interchangeably with Defendant CITY to identify the employer which is Defendant CITY.

5.  Plaintiff ALBERT ARONOV ("ARONOV") is a citizen of the United States of America who was born and raised in Russia (Uzbekistan), is a practicing Jew who speaks with a noticeable accent, and is over twenty-one (21) years of age and is an employee of Defendant CITY OF NEW YORK (hereinafter referred to as the "CITY") more specifically the NEW YORK CITY POLICE DEPARTMENT ("NYPD"). For the purposes of this litigation, NYPD may be used interchangeably with Defendant CITY to identify the employer which is Defendant CITY.

6.  Plaintiff PRZEMYSLAW ("PETE") SZUMILO ("SZUMILO") is a citizen of the United States of America who was born and raised in Poland who speaks with a noticeable accent, is a practicing Catholic, and is over twenty-one (21) years of age and is an employee of Defendant CITY OF NEW YORK (hereinafter referred to as the "CITY") more specifically the NEW YORK CITY POLICE DEPARTMENT ("NYPD"). For the purposes of this

litigation, NYPD may be used interchangeably with Defendant CITY to identify the employer which is Defendant CITY.

7.  Plaintiff JOHN TALAVERA ("TALAVERA") is a citizen of the United States of America of Hispanic descent and is over twenty-one (21) years of age and is an employee of Defendant CITY OF NEW YORK (hereinafter referred to as the "CITY") more specifically the NEW YORK CITY POLICE DEPARTMENT ("NYPD"). For the purposes of this litigation, NYPD may be used interchangeably with Defendant CITY to identify the employer which is Defendant CITY.

8.  Plaintiff GABRIEL VELEZ ("VELEZ") is a citizen of the United States of America who was born and raised in Columbia who speaks with a noticeable accent and is over twenty-one (21) years of age and is an employee of Defendant CITY OF NEW YORK (hereinafter referred to as the "CITY") more specifically the NEW YORK CITY POLICE DEPARTMENT ("NYPD"). For the purposes of this litigation, NYPD may be used interchangeably with Defendant CITY to identify the employer which is Defendant CITY.

## DEFENDANTS

9.  Defendant CITY OF NEW YORK ("CITY") is a municipal entity created and authorized under the laws of the CITY and State of New York.  CITY is authorized by law to maintain a Police Department ("NYPD") that acts as its agent and for which it is ultimately responsible.

10. Defendant CITY is an employer as defined in Title VII, employing more than fifteen (15) employees, and is engaged in an industry affecting commerce.

11. Defendant SERGEANT DAVID JOHN ("JOHN"), a Hispanic male, who self-identifies as black, was at all relevant times a Sergeant in the New York City Police Department and is acting in such capacity at all times relevant herein. Defendant JOHN was at all relevant times Plaintiffs' supervisor and is sued in his individual and official capacity.

12. Defendant LIEUTENANT AKHTAR ("AKHTAR"), a Asian male, was at all relevant times a Lieutenant in the New York City Police Department and is acting in such capacity at all times relevant herein. Defendant AKHTAR was at all relevant times Plaintiffs' supervisor and is sued in his individual and official capacity.

13. Defendant SERGEANT MERCADO ("MERCADO"), a light-skinned Hispanic male, was at all relevant times a Sergeant in the New York City Police Department and is acting in such capacity at all times relevant herein. Defendant MERCADO was at all relevant times Plaintiffs' supervisor and is sued in his individual and official capacity.

14. Defendant SERGEANT TARA KING ("KING"), a white female, was at all relevant times a Sergeant in the New York City Police Department and is acting in such capacity at all times relevant herein. Defendant KING was at all relevant times Plaintiffs' supervisor and is sued in her individual and official capacity.

15. Defendant P.O. ANGEL COLON ("COLON"), a Hispanic male, was at all relevant times a Police Officer in the New York City Police Department and is acting in such capacity at all times relevant herein. Defendant COLON is sued in his individual and official capacity.

## PROCEDURAL REQUIREMENTS

16. Plaintiffs have filed suit with this Court within the applicable statute of limitations period.

17. Plaintiffs are not required to exhaust any administrative procedures prior to suit under the Civil Rights Act of 1871.

18. On or about January 14, 2014, Plaintiff CARDENAS submitted a complaint with the EEOC under charge number 520-2014-00964.

19. On or about February 26, 2014, Plaintiff CARDENAS submitted a Supplemental Charge of Discrimination with the EEOC.

20. Plaintiff CARDENAS received a Notice of Right to Sue letter from the EEOC (Exhibit "A") dated August 29, 2014.

21. On or about February 3, 2014, Plaintiff ARONOV submitted a complaint with the EEOC under charge number 520-2014-01186.

22. On or about February 20, 2014, Plaintiff ARONOV submitted a Supplemental Charge of Discrimination with the EEOC.

23. On or about June 16, 2014, Plaintiff ARONOV submitted a Second Supplemental Charge of Discrimination with the EEOC.

24. Plaintiff ARONOV received a Notice of Right to Sue letter from the EEOC (Exhibit "B") dated August 29, 2014.

25. On or about February 3, 2014, Plaintiff SZUMILO submitted a complaint with the EEOC under charge number 520-2014-01187.

26. On or about March 7, 2014, Plaintiff SZUMILO submitted a Supplemental Charge of Discrimination with the EEOC.

27. Plaintiff SZUMILO received a Notice of Right to Sue letter from the EEOC (Exhibit "C") dated August 29, 2014.

28. On or about February 11, 2014, Plaintiff TALAVERA submitted a complaint with the EEOC under charge number 520-2014-01213.

29. Plaintiff TALAVERA received a Notice of Right to Sue letter from the EEOC (Exhibit "D") dated August 29, 2014.

30. On or about February 11, 2014, Plaintiff VELEZ submitted a complaint with the EEOC under charge number 520-2014-01215.

31. Plaintiff VELEZ received a Notice of Right to Sue letter from the EEOC (Exhibit "E") dated August 29, 2014.

## NOTICES OF CLAIM

32. On or about January 28, 2014 and within the time prescribed by law, a sworn Notice of Claim pursuant to New York State law was timely served upon Defendant CITY OF NEW YORK on behalf of Plaintiff ANN CARDENAS stating, among other things, the time when and place where the injuries and damages were sustained, together with Plaintiff's demands for adjustment thereof.

33. Thereafter, more than thirty (30) days have lapsed and continuing up to the commencement of this action, the CITY OF NEW YORK as failed to make any adjustment or payment thereof and without the matter being resolved.

34. Defendant CITY OF NEW YORK completed its General Municipal Law 50-h hearing of Plaintiff on April 7, 2014.

35. This action was commenced within the time permitted by law.

36. This action was commenced within one (1) year and ninety (90) days after the cause of action accrued.

37. On or about February 4, 2014 and within the time prescribed by law, a sworn Notice of Claim pursuant to New York State law was timely served upon Defendant CITY OF NEW YORK on behalf of Plaintiff ALBERT ARONOV stating, among other things, the time when and place where the injuries and damages were sustained, together with Plaintiff's demands for adjustment thereof.

38. Thereafter, more than thirty (30) days have lapsed and continuing up to the commencement of this action, the CITY OF NEW YORK as failed to make any adjustment or payment thereof and without the matter being resolved.

39. Defendant CITY OF NEW YORK completed its General Municipal Law 50-h hearing of Plaintiff on April 1, 2014.

40. This action was commenced within the time permitted by law.

41. This action was commenced within one (1) year and ninety (90) days after the cause of action accrued.

42. On or about February 4, 2014 and within the time prescribed by law, a sworn Notice of Claim pursuant to New York State law was timely served upon Defendant CITY OF NEW YORK on behalf of Plaintiff PRZEMYSLAW ("PETE") SZUMILO stating, among other things, the time when and place where the injuries and damages were sustained, together with Plaintiff's demands for adjustment thereof.

43. Thereafter, more than thirty (30) days have lapsed and continuing up to the commencement of this action, the CITY OF NEW YORK as failed to make any adjustment or payment thereof and without the matter being resolved.

44. Defendant CITY OF NEW YORK completed its General Municipal Law 50-h hearing of Plaintiff on June 2, 2014.

45. This action was commenced within the time permitted by law.

46. This action was commenced within one (1) year and ninety (90) days after the cause of action accrued.

47. On or about February 11, 2014 and within the time prescribed by law, a sworn Notice of Claim pursuant to New York State law was timely served upon Defendant CITY OF NEW YORK on behalf of Plaintiff JOHN TALAVERA stating, among other things, the time when and place where the injuries and damages were sustained, together with Plaintiff's demands for adjustment thereof.

48. Thereafter, more than thirty (30) days have lapsed and continuing up to the commencement of this action, the CITY OF NEW YORK as failed to make any adjustment or payment thereof and without the matter being resolved.

49. Defendant CITY OF NEW YORK completed its General Municipal Law 50-h hearing of Plaintiff on June 6, 2014.

50. This action was commenced within the time permitted by law.

51. This action was commenced within one (1) year and ninety (90) days after the cause of action accrued.

52. On or about February 11, 2014 and within the time prescribed by law, a sworn Notice of Claim pursuant to New York State law was timely served upon Defendant CITY OF NEW YORK on behalf of Plaintiff GABRIEL VELEZ stating, among other things, the time when and place where the injuries and damages were sustained, together with Plaintiff's demands for adjustment thereof.

53. Thereafter, more than thirty (30) days have lapsed and continuing up to the commencement of this action, the CITY OF NEW YORK as failed to make any adjustment or payment thereof and without the matter being resolved.

54. Defendant CITY OF NEW YORK completed its General Municipal Law 50-h hearing of Plaintiff on June 4, 2014.

55. This action was commenced within the time permitted by law.

56. This action was commenced within one (1) year and ninety (90) days after the cause of action accrued.

## FACTUAL BACKGROUND RELATING TO ALL PLAINTIFFS

57. Plaintiffs are all employed by the CITY OF NEW YORK, New York City Police Department and were assigned to the 83rd Precinct, located at 480 Knickerbocker Avenue, Brooklyn, New York, at all times relevant herein.

58. At all times relevant herein, Plaintiffs held the rank of Police Officer, and worked the day tour with Defendant JOHN as their direct supervisor. All plaintiffs worked in the "Conditions Unit," a specialized detail which assignment is unique as compared to other patrol officers' routine assignments.

59. Defendant JOHN, as a Sergeant and a supervisor, had the authority to make tangible employment decisions effecting the terms and conditions of employment relating to Plaintiffs, including, but not limited to, change of assignments, change of tours, grant or denial of overtime, recommendation for transfers and promotions, issue Command Disciplines and commence disciplinary proceedings against Plaintiffs. Plaintiffs allege that most disciplinary proceedings in the NYPD are initially commenced by those holding the rank of Sergeant.

60. Plaintiffs have been subjected to a continuing pattern and practice of discrimination and hostile work environment based upon their race, gender, national origin, ethnicity and religion, and in retaliation for complaining about defendants' discriminatory actions and other wrongdoings.

61. Plaintiffs assert that the defendants engage in a pattern and practice of discrimination against minority officers and retaliate against officers who lodge complaints of discrimination.

62. Plaintiffs assert that despite their awareness of JOHN's egregious and discriminatory conduct, both OEEO and IAB failed to take any remedial action. In fact, during interviews with OEEO Plaintiffs were asked to "show me on your lawyer" how JOHN touched them, and were asked where and how JOHN had grabbed them. Plaintiffs assert that where or how JOHN grabbed their buttocks and/or other private areas was not relevant to the OEEO investigation and was done solely to harass and intimidate Plaintiffs for having complained.

63. Plaintiffs allege that OEEO has a custom, policy and practice of notifying officers accused of discrimination of the allegations and by whom they were made in direct contravention of EEOC guidelines, and which practice serves to perpetuate retaliation within the NYPD.


**FACTUAL BACKGROUND RELATING TO PLAINTIFF ANN CARDENAS**

64. Plaintiff CARDENAS is a Hispanic female of Puerto Rican descent, who was appointed to the NYPD on January 17, 2008.

65. Beginning in approximately spring 2013 CARDENAS was subjected to unbearable physical and verbal sexual harassment at the hands of Defendant SERGEANT DAVID JOHN, her immediate supervisor, until his resignation from the NYPD. Since July 2012 she has been assigned to the "Conditions Unit" and is the only female in the squad.

66. Defendant JOHN has repeatedly called CARDENAS his "work pussy" both in the car and in the precinct station house and most egregiously in public.

67. When in a public store, 7-11 to get coffee, JOHN told the clerk "don't look at my muffin" and grabbed CARDENAS's butt. She immediately pushed him away.

68. JOHN would call the 7-11 employees "faggots" and told them that he would "fuck them up the ass."

69. On numerous occasions Defendant JOHN grabbed CARDENAS's buttocks and thighs without permission, despite that she repeatedly told him to stop.

70. JOHN constantly greeted other male officers in the precinct and most egregiously at the front desk where members of the public were present, with "What's up … get your dick sucked?" or "get your dick sucked today?"

71. JOHN would refer to himself as "Kingditions Sergeant."

72. And, while driving JOHN would comment on every female he saw and stated 50-70 times a day "I want to get my dick sucked" or "can I smell your muffin?"

73. On June 18, 2013 JOHN handcuffed CARDENAS in the Conditions office.

74. In the summer of 2013, while CARDENAS was in the precinct sitting on the couch in the conditions unit room, JOHN grabbed her, threw her down, and held her down while trying to kiss her. JOHN then climbed on top of CARDENAS and would not let her up.

75. In 2013, on multiple occasions, JOHN climbed on top of CARDENAS and did not allow her to get up.

76. In the summer of 2013 JOHN stated that he "knows people" on this job and is "untouchable." JOHN first stated that he was going to make his wife "look bad in court for the slut she is" and that he should take sole custody of their son. He said that he had shoved her once because he did not like the way she was handling his son. JOHN said that she "knew better than to call the cops" and "she wouldn't have gotten a penny from me if she did" and "she can't manage with her shitty job at Con Edison." JOHN ended off by saying "look what ended up out of me hitting my first baby momma, I got modified but that fat bitch knew that she'd be losing money for the kid so that went nowhere."

77. Also, at one time JOHN took all the sergeants' Sergeant's Benevolence Association ("SBA") cards and when he was approached by a fellow sergeant he said "what are you gonna do?" and said to CARDENAS "Ann, see? don't fuck with me."

78. At one point CARDENAS was selling an extra television that she had and JOHN insisted that she sell it to him. CARDENAS's boyfriend loaded it into her car and she brought it to work. Several officers watched JOHN load the TV into his vehicle and give her money. JOHN promised to pay the rest, though he never did.

79. JOHN asked the team members to help him out and purchase some of the things from his apartment as he could no longer afford to live there. CARDENAS and her boyfriend rented a U-Haul one day and purchased a used (and later discovered to be broken) washer and dryer as well as a juvenile drawer from JOHN. In late summer 2013 JOHN told CARDENAS that he moved from that home because he could no longer get away with not paying rent to the detective from whom he was renting. JOHN then said "that's why I

left that nigga's garage looking like shit and all that garbage in the house. Nigga learned that's why Sandy fucked that house up."

80. At one time, CARDENAS was contemplating renting out the upstairs of her house to another officer. JOHN told the officer that CARDENAS did not like her and that she would not rent to her. Then, JOHN asked CARDENAS to rent it to him instead. CARDENAS said no.

81. JOHN constantly told officers in the precinct that their wives were cheating on them "getting big black cock" and that they would be stupid not to do the same.

82. Prior to being assigned to the 83rd Precinct, CARDENAS was on modified duty in IRT in Manhattan as a result of an incident between her ex-boyfriend and a male officer she was dating at the time. JOHN told CARDENAS that because of the alleged incident no one would ever believe her on the job and that "women are all dirty sluts." He also said that "women will always look bad on this job because they can try to be one of the boys but it will never work." He said "look what I did to [a female officer]. I loved her. Bitch started seeing other guys and I wasn't having that. When I went down to the EEO office they all laughed and said 'yea bro, don't worry, we all know she is a slut.'"

83. JOHN would call his then-wife and verbally abuse her over the phone while on speaker and then tell CARDENAS that "all women are sluts. I've been cheating on her since the beginning and I'm going to fuck one of her friends." JOHN then zoomed in on a photo of his then-wife's friends, pointed to a woman and said "this one lost so much weight I'm gonna fuck her." Then JOHN said "that bitch thinks I take these pictures as group pictures but it's to look at her friends and rub one out."

84. When a new female Sergeant was assigned to the command, JOHN said to CARDENAS "I want to fuck her. I'm going to fuck her."

85. JOHN also showed CARDENAS pictures of his penis and asked "is this big? It's bigger than your boyfriend's" This was also done in front of other officers.

86. In late 2013 JOHN would constantly grab CARDENAS and say "that's mine." When she told him to stop, JOHN would say "you always let me, don't you freaking move my hand."

87. JOHN told CARDENAS that he had pictures of all the female officers, including her. He said that he liked my Halloween costume that I had posted on Facebook and made "meow" sounds. JOHN said that the photo was sent to him by text message by someone in the precinct who CARDENAS is Facebook friends with and that he masturbated to the pictures.

88. JOHN would frequent a toy store while on duty and would say to the Asian woman who worked there "me love you long time" under his breath. He would also throw things on the floor. Indeed, one of the Asian female employees asked me to please take JOHN out of the store.

89. JOHN would order CARDENAS and the other team members to get "dressed up" in plainclothes and go out to sell stolen cell phones. This was a clear violation of NYPD rules and regulations which require an officer to be "plain clothes qualified" which Plaintiffs were not.

90. At work in November 2013, JOHN took a picture of his penis next to CARDENAS's face (she had been resting her eyes with a jacket over herself).

91. In the car JOHN showed CARDENAS a photo of his penis in Plaintiff ARONOV's lunch box.

92. JOHN would often take photos of unsuspecting female officers, including zooming in on their breasts and butts.

93. JOHN would ask officers "how much [money] to watch your mom get pounded by a black guy?" JOHN would also ask officers to choose either their mother or their wife to be raped.

94. In November 2013, JOHN tried to touch CARDENAS's inner thigh, she pushed him away. He asked "do you like banana?" and began petting CARDENAS and saying "good banana, good banana."

95. When JOHN began going through his divorce and as he got closer to retirement he became even more unbearable. JOHN constantly pleaded for CARDENAS to purchase items for his apartment on her credit card for him while on job time. He was even living in the precinct for a period of time.

96. JOHN also repeatedly parked his unregistered vehicles in the NYPD lot and virtually abandoned them for over a year despite the fact that there are few spots. JOHN had several vehicles in the precinct parking lot at a time, including one with plates that did not match the car and one with flat tires. One of the vehicles was taking up a spot in the area specifically designated for police officers, until it was finally rolled by officers from that area to a corner of the lot where it sits to present. JOHN also had an inoperable vehicle taking up a spot in the sergeants' designated area for over a year. JOHN said "no one will dare do anything" to him.

97. On December 16, 2013, JOHN grabbed the black female cleaning-woman in the precinct, he smacked her butt and kissed her on the lips. He then threw garbage on the floor and told the woman to "pick it up, you're a cleaning lady." He also stated that she was "as black as the garbage bags."

98. Then, a short while later he did the same thing to CARDENAS – smacking her butt and kissing her - in front of Plaintiffs ARONOV and SZUMILO.

99. Also during December 2013, JOHN said to CARDENAS "I'm going to bust all over your face" while making a motion of himself ejaculating in front of Plaintiffs ARONOV and SZUMILO.

100.    During the precinct 2012 Christmas party at a Mediterranean restaurant JOHN said to CARDENAS's friend, who she had invited along, "You're ugly but I'll still fuck you."

101.    A few months later, JOHN said to CARDENAS, in front of another sergeant, that she should sit on his face.

102.    JOHN said to CARDENAS "I'd love to come all over your ass" in front of Plaintiff TALAVERA.

103.    In 2013 JOHN also told CARDENAS to "take advantage now when you're young, when you're old no one will" and played a rap song on his phone - he put the phone by CARDENAS's ear and sang along with the lyrics which stated that "Bitches ain't shit, but hoes and tricks."

104.    JOHN also repeatedly told CARDENAS that if she waits to have children she will have "retarded" children like the female sergeant in the precinct.

105.    JOHN constantly called CARDENAS a "dumb bitch" and "stupid slut."

106.    JOHN would constantly try to break Plaintiffs' confidence and make them insecure. JOHN would tell CARDENAS that she "needed a nose, tit and hairline job." JOHN also told her that she was "part nigger" and if she let her hair down it would stay in place.

107.    JOHN would say to the entire team that an officer's "mother is getting fucked right now by the Lieutenant…he's probably his bastard child." JOHN would also ask the officer whether he ever hears his "mom getting pounded by the lieutenant through his bedroom wall."

108.    JOHN also cursed out an emotionally disturbed immigrant male on the street, including calling him a "faggot," and "immigrant fuck" and said that he "fucked his mother." This only aggravated the situation.

109.    Further, JOHN often pulled his pants down in front of CARDENAS. He often slept in the office with his belt undone, and would then pull his pants down, grab his groin and say to CARDENAS "Ann, hold this for me" and would do this in front of other officers. On one occasion he was trying on uniforms in the fitting room of a police equipment shop and exited with his pants down and said to CARDENAS "Ann, fix this."

110.    JOHN would grab CARDENAS and push her against the wall and grind his body against her while making grunting sounds. He even pinned CARDENAS as she was searching a vehicle and said "oh yea you like this…let me grab that muffin." CARDENAS tried to escape from his grasp and turned around at which point he grabbed her breast and put his open mouth on her neck and cheeks. Then, as CARDENAS tried to pick up a collar brass from the floor JOHN did not let her. This incident was even photographed.

111.    JOHN has had prior complaints lodged against him, yet the NYPD has failed to take any action. After an officer he was intimately involved with told him she was no longer interested in him, he got upset and when he suspected she began dating a different officer he approached that officer and asked "How do I taste?" Another time, while CARDENAS was engaged in a conversation with a male officer, JOHN interrupted and told him to stop talking to CARDENAS. JOHN proceeded to tell the officer he was "stupid to have gotten married" because "Did you think you were gonna be the last cock she got?"

112.    Also, two black officers complained that JOHN called them each "nigger." This incident was even reported in the newspaper, yet, JOHN never faced any disciplinary action.

113.    On paydays, JOHN would walk around the precinct with his pay stub and make fun of officer who made less money than him. JOHN would say "three months ago I was where you are at now" and would add that he makes great money providing security to a Russian-owned lounge in Queens.

114.    JOHN was once accused of getting his cars fixed for free at a mechanic shop owned by an 83rd Precinct auxiliary police officer. JOHN believed that this accusation had been made by Officer Haber, who JOHN had recently had transferred from the Conditions team. JOHN went around the precinct asking people for naked pictures of Officer Haber so that he could humiliate him.

115.    As part of their duties on the Conditions team Plaintiffs were required to perform prostitution sweeps. On many occasions during those sweeps they arrested transvestite prostitutes. While Plaintiffs would be fingerprinting the transvestite arrestees, JOHN

would take pictures of them and call them "faggots" because they were touching the "he-shes." JOHN would also edit the pictures he took by drawing on them and would send the edited pictures to officers or show to people in the precinct. On one occasion when the team had arrested an attractive transvestite JOHN stated "This one I would definitely let suck my cock." When officers in precinct looked at him with disbelief JOHN said "What? A wet mouth is a wet mouth."

116.    Even at his own mother's wake following her passing JOHN made inappropriate sexual comments about the females in attendance.

117.    Once, when attended a female officer's wedding, JOHN began to sexually harass some of the guests, including a female officer sitting at an adjoining table. A female sergeant from the 83rd Precinct confronted JOHN and told him to stop. JOHN doused her with water. Afterwards, JOHN then began bragging in the precinct about how he had doused the female sergeant and said that she was jealous that he was not doing it to her and that she was ugly.

118.    JOHN repeatedly stated that he was "well connected" in the NYPD and that he knew high ranking officers in the Department, such as Chiefs, Inspectors, and officers in Internal Affairs.

119.    JOHN would say "you either get along with me or not, and you see what happens when people try to disobey the King."

120.    JOHN even threatened to retire, "load up on HGH and go to Ann's [CARDENAS] house and rape her". He also said that he had the best career and did whatever he wanted and that would come back to the precinct high from weed and in his underwear and let Plaintiffs try to arrest him and "we will see, I'll rape you in the street."

121.     Once, JOHN picked up his seventeen year old son in a police vehicle and out of uniform after visiting the pension section and began to touch CARDENAS inappropriately in front of his son. CARDENAS repeatedly told him to stop. JOHN said "my son knows how I am, you should hear the shit I say about his hot girlfriend, especially the one he took to prom."

122.     On one occasion, a day tour Lieutenant told JOHN to stop sexually harassing the female desk sergeant. JOHN called CARDENAS later that day and tried to force her to file a complaint against the Lieutenant and allege that he made her feel uncomfortable. CARDENAS had the phone on speaker during this conversation.

123.     When his retirement was imminent, JOHN demanded that the team (including Plaintiffs) throw him a retirement party, which they declined. JOHN became furious. He said he was going to give them bad evaluations for their refusal. JOHN then went on terminal without doing Plaintiffs' evaluations, which left another supervisor for whom Plaintiffs had not worked to complete the evaluations and JOHN said "I don't have to do shit...don't want to throw the king a party."

124.     Despite the overwhelming evidence against JOHN and the constant harassment CARDENAS has endured at his hands in and around the station house and most egregiously in the presence of the supervisors of the 83rd Precinct including but not limited to the defendants; and at the hands of the Defendants, many of whom have looked the other way as if they did not know about the discrimination and harassment. There is no question that JOHN's superiors were well-aware of his harassment and discrimination, as Defendant LIEUTENANT AKHTAR told JOHN in the presence of some of the plaintiffs to stop the sexual innuendo. However, everyone was afraid of retaliation at the

hands of JOHN or the Department. They did nothing to address or prevent his continued harassment; the supervisors failed to protect Plaintiffs and report JOHN behavior because he was a fellow supervisor or their friend, and perhaps because they were scared themselves.

125.     In early January of 2014, CARDENAS was at or around the front desk in the presence of superior officers, about to sign out of work at 3:40 p.m., as was Defendant P.O. ANGEL COLON who works in the same precinct as CARDENAS. Defendant COLON stated within earshot of the supervisor to CARDENAS that he would rape her. She said "excuse me?!!" He said "uh, but in a good way." CARDENAS told him that she did not appreciate that comment and walked away. Plaintiff SZUMILO and Defendant MERCADO witnessed the incident. CARDENAS was told to 'relax' that COLON is just a "perv." Contrary to NYPD Patrol Guide Rules and Regulations the incident was neither reported to the NYPD Office of Equal Employment nor remedied.

126.     Defendant COLON also forcibly squeezed CARDENAS's buttocks. CARDENAS told him to never do that again.

127.     On January 9, 2014, while CARDENAS was in the precinct, she was approached three separate times by Defendant COLON. The first time he came to where CARDENAS was sitting with a fellow officer doing paperwork and he began to gaze at CARDENAS's buttocks area and began to speak about her buttocks. He stated that it was round and big and that he would love to do things to CARDENAS and be a part of it and he wants to squeeze it again. A male officer witnessed the incident and he although visibly embarrassed and shocked, and contrary to NYPD Patrol Guide rules and regulations, failed to report the violation to the NYPD Office of Equal Employment.

128.     Then, Defendant COLON then returned a minute later and began to speak again about things he would love to do to CARDENAS. And, around 3:40 p.m. COLON came up to CARDENAS from behind and grabbed her waist and squeezed her against his body. He whispered in CARDENAS's ear that he "wanted" her. Many people in the station house were present when he did this, including supervisors, and contrary to NYPD Rules and Regulations, failed to report the incident to the NYPD Office of Equal Employment. CARDENAS jumped and told him to get away and walked away. Plaintiff SZUMILO witnessed this incident.

129.     Following her filing of a charge of discrimination with the EEOC and a separate complaint to the NYPD OEEO, Defendants have been repeatedly retaliated against CARDENAS.

130.     Specifically, since that time other officers refuse to speak to CARDENAS, supervisors also refuse to greet her and give her the "cold shoulder."

131.     After CARDENAS lodged a complaint, Defendant SERGEANT MERCADO who took over the "Conditions Unit" upon SERGEANT JOHN'S retirement, told Plaintiff SZUMILO that CARDENAS and ARONOV would be "off the team" soon, without giving any explanation as to why. MERCADO also said that SZUMILO should watch who on the team he associates with because they can hurt him, and he has a lot to lose (referencing the fact that SZUMILO had recently passed the sergeants exam).

132.     In addition, since CARDENAS lodged her complaints CARDENAS has been retaliated against in that Defendant MERCADO wrote her up in the "minor violations log" (the first level of discipline which behavior if repeated can lead to formal discipline) twice in one day. The first was for not filling out the arrest log. Technically, officers are

supposed to fill out the log for every arrest, but the log was not available until recently, and, suspiciously, all the other teams were informed that the log was now available, except for CARDENAS's team. Furthermore, CARDENAS reviewed the arrest log and found two male officers who had not filed either an EEOC or and OEO complaint, had not filled out the arrest log yet were not put in the minor violations log.

133.     The second time CARDENAS was written up in the minor violations log, she was processing an arrest and helping at reception as well as tending to the perpetrator in the cells. The sergeant who was covering the desk then gave CARDENAS two complaint reports (which included two victims but the same incident) to input into the system for assault in the second degree. CARDENAS was swamped with work and in the middle of processing an arrest, so she told him she would do it as soon as she got a chance. When CARDENAS input the complaint, instead of generating two separate complaints she generated one (putting both victims in the same complaint), she was therefore written up in the minor violations log a second time.

134.     Other officers are not written up for such minor mistakes, they are given the opportunity to correct the mistake. CARDENAS however was written up immediately. CARDENAS has been treated unfairly, unjustly and unequally in retaliation for having lodged complaints with OEEO and the EEOC.

135.     As a result of the discriminatory and retaliatory treatment, Plaintiff CARDENAS has suffered severe and extreme physical, mental and emotional damages, including but not limited to stress, weight gain, loss of hair depression, and loss of sleep among other damages and injuries.

## FACTUAL BACKGROUND RELATING TO PLAINTIFF ALBERT ARONOV

136.     Plaintiff ALBERT ARONOV was born and raised in Russia (Uzbekistan) and has a noticeable accent and is also a practicing Jew. He was appointed to the NYPD on January 20, 2004.

137.     Beginning in approximately July of 2012 ARONOV has been subjected to physical and verbal sexual harassment at the hands of Defendant SERGEANT DAVID JOHN, his immediate supervisor. ARONOV has been forced to suffer an outrageous hostile work environment wherein Defendant JOHN routinely abuses the minorities in the Unit, especially those with an accent, such as ARONOV. Since July 2012 ARONOV has been assigned to the "Conditions Unit" and is the only Russian Jew in the squad.

138.     JOHN has repeatedly called ARONOV his "dirty Jew" both in the car and in the precinct.

139.     While ARONOV was studying for the Sergeant's exam, JOHN repeatedly called him a "dumb Jew", and said "I don't know how you became an officer; you will never become a Sergeant."

140.     JOHN repeatedly grabbed ARONOV's butt and groin area. ARONOV always pushed JOHN away.

141.     JOHN said to ARONOV "your people over there are like niggers over here".

142.     JOHN constantly greeted other male officers at the front desk with "What's up … get your dick sucked?"

143.     And, while driving JOHN would comment on every female he saw and stated 50-70 times a day "I want to get my dick sucked" or "I want to smell your muffin."

144.     JOHN repeatedly licked his index finger and would stick it in ARONOV's ear while he was driving JOHN. JOHN would also repeatedly rub and caress ARONOV's thigh while he was driving him and unable to fight back or move away. JOHN would also take ARONOV's hand as he was driving and bring it to his crotch.

145.     In the "Anti-Crime" room within the 83rd Precinct station house and also while in the squad car, JOHN would constantly put his Galaxy phone on and watch "x-video.com" a pornographic website. He would repeatedly turn to Plaintiff CARDENAS and groan or moan and say "Ann, don't you wish you could get pounded out like that".

146.     JOHN would often involuntarily show ARONOV personal videos of himself having sex.

147.     On June 18, 2013 JOHN handcuffed ARONOV in the Conditions office.

148.     In the summer of 2013, while ARONOV was in the precinct sitting on the couch in the conditions unit room, JOHN grabbed him, threw him down, and held him down while trying to hold his legs.  JOHN then climbed on top of ARONOV and would not let him up. JOHN yelled "give it to the King, open your legs don't lock your legs! I'll rape you like in jail".

149.     When a new female Sergeant was assigned to the command, JOHN said to ARONOV "I want to fuck her. I'm going to fuck her."

150.     JOHN also showed ARONOV pictures of his penis and asked "is this big? It's bigger than yours". This was also done in front of other officers.

151.     In November 2013 ARONOV was in the car with JOHN and two other police officers with JOHN in the front passenger seat. JOHN showed ARONOV and the others photos on his phone – one of his penis in ARONOV's lunch and another of his penis next

to Plaintiff CARDENAS's head. JOHN purposely embarrassed and humiliated the male officers, including ARONOV, by making them watch as he showed Plaintiff CARDENAS and other officers in the precinct photos of his penis.

152.    In June 2013, JOHN repeatedly rubbed ARONOV's head, and ARONOV pushed him away. JOHN asked "do you want my big hands all over your nice body??" and rubbed ARONOV repeatedly.

153.    On December 16, 2013, JOHN grabbed the black female cleaning-woman in the precinct; he smacked her butt and kissed her on the lips. Then, a little while later, he did the same thing to PLAINTIFF CARDENAS – in front of other police officers.

154.    JOHN constantly calls ARONOV a "dirty Jew," "stupid Jew," and "cheap Jew."

155.    Further, JOHN often pulls his pants down in front of ARONOV. He often sleeps in the office with his belt undone, and will then pull his pants down, grab his groin and says to Plaintiff CARDENAS  "Ann, hold this for me" and will do this in front of other officers, including ARONOV. He would also put his hand in his pants and touch Plaintiffs' faces with the sweat from his private parts.

156.    When ARONOV installed a "Nanny Cam" (video camera) in his home after his second child was born, JOHN said to ARONOV, in front of the entire squad, "How about I come and fuck your wife and you see a big black man on the video come to fuck your wife? I'll do it and give you lost time to come watch." JOHN followed these statements by making sexual grunting noises.

157.    JOHN would ask officers "how much [money] to watch your mom get pounded by a black guy?" JOHN would also ask officers to choose either their mother or their wife to be raped.

158.    JOHN would often belittle ARONOV due to the different customs in his religion, saying "come on Al let's put the sheet between us!" or JOHN would groan and say "I can't find the sheet." JOHN would also joke "how does Al receive/perform oral sex through a sheet?"

159.    JOHN even came to ARONOV's home when drunk and said to ARONOV in front of his wife "Your wife has beautiful breasts." Later he said to ARONOV "I will fuck your wife with my big black 10 inch [penis]."

160.    For several months, JOHN showed complete irreverence for his fellow officers and his supervisors. JOHN brought his dog to the station house, has ridden his motorcycle inside the station house, and called into the Desk, put the phone on speaker, and said "This is the King, Nigga" to the black sergeant who answered the phone. When the black sergeant said "I'm sorry, I don't know who you are" JOHN responded "Nigga, don't make me show you." JOHN even brought a fake crown and wore it around the station house.

161.    JOHN would order ARONOV and the other team members to get "dressed up" in plainclothes and go out to sell stolen cell phones. This was a clear violation of NYPD rules and regulations which require an officer to be "plain clothes qualified" which Plaintiffs were not.

162.    Despite the overwhelming evidence against JOHN and the constant harassment ARONOV has endured at his hands and the hands of the Defendants, many have looked the other way as if they did not know about the discrimination and harassment. There is no question that JOHN's superiors were well-aware of his harassment and discrimination, as Defendant LIEUTENANT AKHTAR told JOHN to stop the sexual innuendo.

However, upon information and belief, no official complaint was made nor was any investigation conducted. Most egregiously, JOHN did not stop but actually got worse.

163.    JOHN constantly threatens anyone who wants to file a complaint against him or have the audacity to transfer out of his unit. JOHN stated that he would "kick niggas out" like how he "got [Officer] Haber kicked out. Haber had previously filed a complaint against JOHN.

164.    In the spring of 2013, an NYPD officer who used to work under JOHN and who JOHN had told his subordinates had made an EEO complaint against him, was involved in a murder/suicide. JOHN told ARONOV, SZUMILO, and the other team members "see that what happens to people who fuck with me." JOHN further stated "1 down 1 to go" referencing the deceased officer's partner who had also made an EEO complaint against JOHN.

165.    Any time ARONOV requested time off his requests were torn up.

166.    Anytime ARONOV put in a transfer request, which must be approved by the Sergeant (i.e. Defendant JOHN), he tore the request up.

167.    And, when ARONOV complained of his outrageous behavior, JOHN threatened him with punishment posts such as "walking a beat at midnight on Eastern Parkway" or being thrown into "BCB" (Brooklyn Central Booking) or being put on "TS" (telephone switchboard).

168.    JOHN drew a penis squirting semen at photos of ARONOV, CARDENAS and SZUMILO on his Galaxy notebook and showed it to officers in the precinct.

169.    JOHN even threatened to retire, "load up on HGH and go to Ann's [CARDENAS] house and rape her."

170.    JOHN showed ARONOV as well as other officers and civilian workers the before and after photos of his wife's breast surgery.

171.    ARONOV witnessed the incident wherein Defendant COLON said to CARDENAS that he would rape her as well as the January 9, 2014 incidents with COLON talking about CARDENAS's buttocks and what he wished to do to it and her, and later physically grabbing her in the radio room. ARONOV was embarrassed and shocked but felt powerless, humiliated and ashamed.

172.    Much of the discrimination and harassment was done in front of the Integrity Control Officer, Defendant SERGEANT KING, but she did nothing and was even harassed by JOHN herself.  JOHN has repeatedly slapped her buttocks and squeezed it right in full view of all including ARONOV.

173.    Even when JOHN left (on terminal retirement leave) his replacement Defendant SERGEANT MERCADO picked up where JOHN left off.

174.    Once COLON was driving MERCADO in the patrol car and parked side-by-side with the patrol car ARONOV was driving with SZUMILO in the front passenger seat and CARDENAS in the back when Defendant COLON said loudly "You got a perp in the back there (referring to CARDENAS)…oh its Ann – I want her…I want to suck her toes…I want to suck the toe cheese from between her toes." MERCADO merely laughed and did nothing.

175.    Rather than address the situation with Defendant COLON appropriately, MERCADO threatened CARDENAS with being forced to work with Colon.

176.    And, the presence of ARONOV and MERCADO (a supervisor) COLON said to CARDENAS "I want to lick your ass" to which MERCADO joked "I'll call EEO now

for you Ann" and laughed inappropriately but did not call EEO, contrary to NYPD Patrol Guide Rules and Regulations.

177.     MERCADO has asked ARONOV "how do I know you're not a terrorist from Uzbekistan? And also referred to ARONOV as a "Chechenian terrorist."

178.     MERCADO disregarded any complaints of discrimination and harassment, even joking "Ann we should put a camera on you --- you're a walking OEEO Poster Board."

179.     Following ARONOV's filing of an EEOC Charge and an internal OEEO complaint, he has been repeatedly retaliated against.

180.     Specifically, since that time other officers refuse to speak to ARONOV, supervisors also refuse to greet him and give him the "cold shoulder."

181.     In addition, supervisors have threatened that ARONOV will lose his special unit assignment (Conditions Unit).

182.     Also, since the filing of his complaints ARONOV suffered a line-of-duty injury while on the job. Defendants refused to designate the injury as line-of-duty, claiming that there were no witnesses. In reality, there was a female who saw the accident, and ARONOV's injury should have been so-designated.

183.     ARONOV was denied a line-of-duty designation in retaliation for having lodged complaints with the EEOC and EEO. The NYPD has a policy of unlimited sick.

184.     Also, a sergeant called the medical division alleging that ARONOV was faking his injury. As a result, a sergeant from the medical division came to ARONOV's home on several occasions to check on him.

185.     Defendant MERCADO told Plaintiff SZUMILO that CARDENAS and ARONOV would be off the team soon, without giving any explanation as to why.

Further, since ARONOV lodged complaints of discrimination, he has been assigned to a foot post and prisoner transport on a daily basis. Prior to his complaints ARONOV had rarely been given such assignments while in the Conditions Unit; in fact, none of the officers in the Conditions Unit are given such assignments.

186.    In addition, on one such day where ARONOV was assigned to a foot post, he made an arrest on a warrant. While in the middle of processing the arrest, Defendant AKHTAR made him stop and transport the prisoner himself to central booking. ARONOV had never been forced to transport a prisoner before, especially not in the middle of processing an arrest.

187.    On February 20, 2014, ARONOV was made aware that his locker was defaced with the word "Rat" written all over the outside of the locker.

188.    And, ARONOV was told "shut up rat" several times over the radio.

189.    MERCADO also threatened that Plaintiffs could not work with each other anymore, despite that ARONOV and SZUMILO had worked with each other for 2 years and have been partners. MERCADO did not give any explanation as to why they cannot work together.  Defendants purposely split Plaintiffs so they would not work together anymore, which is not only contrary to custom, policy and practice to maintain partners for continuity and productivity, it is particularly disadvantageous to the NYPD as SZUMILO and ARONOV had made over 300 arrests in the past two years including the single largest 40 lb. marijuana arrest in the precinct. ARONOV and SZUMILO received scores of 4.5 out 5.0 on their yearly evaluations and received "officer of the year" awards in 2012. ARONOV has also received integrity awards for having reported bribery.

190.    Following the filing of his EEOC and Supplemental EEOC charges, on April 14, 2014 ARONOV discovered that the front driver's side tire on his personal vehicle had a flat.

191.    Then, on April 17, 2014 ARONOV found two nails under both passenger side tires – front and back – in the parking lot. ARONOV removed them.

192.    Then on May 14, 2014 at about 9:50 p.m. ARONOV found two nails in his rear driver's side tire.

193.    Finally, on May 23, 2014 when leaving the precinct ARONOV discovered his rear tire was flat again. This was undoubtedly done in retaliation for his having lodged complaints of discrimination and to harass him.

194.    Thereafter, ARONOV applied for a transfer to NYPD Intelligence Division a specialized unit which would be a tremendous advancement to his career and a significant increase in earnings potential as he would be afforded an increase in overtime and potentially a raise in salary to a Detective 3rd Grade rate of pay.

195.    From October 2013 and on ARONOV went to two interviews with NYPD Intelligence Division for a transfer to that Unit.

196.    On January 20, 2014 ARONOV had his final interview – with Assistant Chief of Intelligence Division Thomas Galati at One Police Plaza. ARONOV was verbally encouraged and it was more than intimated that he "had the job."

197.    On Thursday, March 6, 2014 ARONOV received a phone call from Detective Mason of the Intelligence Division. He stated that he had just dropped ARONOV's paperwork at the Personnel Division, and so ARONOV should get my transfer within a month.

198.     On May 14, 2014 at about 3:30 p.m. ARONOV called Personnel and spoke to PAA Jasmine who said that his transfer status was sent to the Intelligence Division. She said that she could not release the information to him. ARONOV therefore called Detective Mason at Intelligence who said "I can't tell you anything about your transfer…I do not deal with that."

199.     On May 20, 2014 ARONOV went to One Police Plaza and spoke to Sergeant Green from the Career Path program. He checked his computer and told ARONOV that he did not have any information about ARONOV's transfer. He asked for ARONOV's cell phone number and promised to call him back after he spoke to someone at Intelligence Division.

200.     On May 21, 2014 ARONOV called Sergeant Green and he told him that he could not tell ARONOV what was going on and that ARONOV should be getting a call from Sergeant Cafaso from Intelligence Division.

201.     When ARONOV did not receive said call he called Sergeant Cafaso himself and left a message and finally received a response. Cafaso told ARONOV that the "official" reason ARONOV did not get the transfer was because the 83rd Precinct (where he was assigned) had "low man power."

202.     However, other officers in the command were transferred at about that time. Obviously, the purported lack of man power in the 83rd Precinct was merely an excuse to retaliate and discriminate against ARONOV by denying him a transfer to the Intelligence Division.

203.     Further, upon information and belief, there was no "man power" issue at the 83rd Precinct.

204.    As a result of the discriminatory and retaliatory treatment, Plaintiff ARONOV has suffered severe and extreme physical, mental and emotional damages, including but not limited to stress, weight loss, and loss of sleep among other damages and injuries.

### FACTUAL BACKGROUND RELATING TO PLAINTIFF PRZEMYSLAW (PETE) SZUMILO

205.    Plaintiff PRZEMYSLAW (PETE) SZUMILO was born and raised in Poland and has a noticeable accent. He was appointed to the NYPD on July 1, 2003.

206.    Beginning in approximately July of 2012 SZUMILO has been subjected to physical and verbal sexual harassment at the hands of Defendant SERGEANT DAVID JOHN, his immediate supervisor. SZUMILO has been forced to suffer an outrageous hostile work environment wherein Defendant JOHN routinely abuses the minorities in the Unit, especially those with an accent, such as SZUMILO. JOHN's behavior worsened when he began going through his divorce and as he got closer to retirement. Since July 2012 SZUMILO has been assigned to the "Conditions Unit" and is the only Polish male in the squad.

207.    Defendant JOHN has repeatedly called SZUMILO his "dumb Pollock" and "dumb immigrant" both in the car and in the precinct most egregiously at the front door where numerous members of the public were present, as well as where supervisors were present.

208.    JOHN constantly calls SZUMILO a "dumb Pollock" and "dumb immigrant" and would tell "dumb Pollock jokes."

209.    JOHN's repeated references to SZUMILO as a dumb Pollock were made in front of the desk and other supervisors. For example, while JOHN was at the desk, in front of

civilians and other officers that were passing by, JOHN asked "where does 'dumb Pollock' come from?" and said "being dumb is the worst thing you can be called."

210.    JOHN also said "I've got a dumb Pollock here" (referring to SZUMILO), and "Do you know that joke about a dumb Pollock tying his shoes". This particular incident went on for nearly 10 minutes and is tape recorded.

211.    JOHN would also make fun of SZUMILO's son by saying that he "is not really American because both of his parents are immigrants."

212.    On several occasions JOHN said to SZUMILO that since a lot of Jews come from Poland (where he is from) he could be a "dirty Jew" like ARONOV and that is "much worse than being a nigger." He continued to say that SZUMILO was "lucky that Hitler didn't kill all the Poles and Jews."

213.    JOHN constantly greeted other male officers at the front desk with "What's up … get your dick sucked?"

214.    And, while driving JOHN would comment on every female he saw and stated 50-70 times a day "I want to get my dick sucked" and "I want to smell your muffin."

215.    JOHN also grabbed SZUMILO's buttocks and groin area. SZUMILO always pushed him away. JOHN would also punch SZUMILO in the chest or back, and would also come up from behind and lift SZUMILO up with his fist from SZUMILO's groin area.

216.    Specifically, JOHN punched SZUMILO on the chest or back on November 25 and 27, and December 3, 13, 16, 19 and 31 of 2013.

217.    On one occasion in December JOHN punched SZUMILO by the desk area. JOHN said to SZUMILO "I could kill you if I wanted to." A captain witnessed the incident but

said nothing and just walked back to his office. When SZUMILO told JOHN that he was going to speak with the captain, JOHN just laughed and said "I'm weeks away from retirement they can't do anything to me and if captain wants I can bring out the affair he is having."

218.    JOHN repeatedly licked his index finger and would stick it in SZUMILO's ear while he was driving JOHN.

219.    JOHN would also repeatedly rub and caress SZUMILO's thigh while he was driving JOHN and was unable to fight back.

220.    JOHN would also take SZUMILO's hand and bring it to his crotch while he was driving JOHN.

221.    JOHN tormented SZUMILO about his broken tooth saying that he had broken it when he smacked SZUMILO with his cock.

222.    JOHN often said that "all women are sluts and whores" even Plaintiffs' mothers. He continued to say that he was "going to fuck [SZUMILO's] mother" so she could experience how it is to be with a big black guy and that "she needs to learn."

223.    JOHN would ask officers "how much [money] to watch your mom get pounded by a black guy?" JOHN would also ask officers to choose either their mother or their wife to be raped.

224.    JOHN commonly referred to officers and civilians "niggers," "gooks," "tacos," "faggots," and "white trash." He also referred to Muslims as "sand niggers."

225.    In the "Anti-Crime" room within the 83rd Precinct station house and while in the squad car JOHN would constantly put his Galaxy notebook or phone on and watch "x-video.com" a pornography website.

226.    JOHN would often turn to Plaintiff CARDENAS and repeatedly groan or moan and say "Ann, don't you wish you could get pounded out like that?"

227.    JOHN often showed personal videos of himself having sex and showed SZUMILO the before and after photos of his wife's breast surgery.

228.    Once when SZUMILO was called down to be DOLE tested (drug tested) JOHN went with him and on the way told SZUMILO that he had put drugs in SZUMILO's food and had called IAB to inform them that SZUMILO should be DOLE tested. JOHN then made fun of SZUMILO saying that he was getting fired and even called CARDENAS to torment SZUMILO and make fun of him. Even after SZUMILO finished the DOLE test JOHN would not tell him if he was joking or not. JOHN said "when men in suits come to the precinct to take your gun that's when you will know." As a result of not knowing, and before SZUMILO realized that JOHN was playing mind games, for a few weeks SZUMILO was unable to eat or sleep and was worried about his future.

229.    In the spring of 2013, while JOHN was homeless and for a few weeks was living in the 83rd Precinct sergeant's lounge, said to SZUMILO several times that he would kick SZUMILO off the Conditions team if he did not rent JOHN one of the apartments in his building.

230.    In the summer of 2013, while SZUMILO was in the anti-crime room, Plaintiff ARONOV was sitting on the couch in the conditions unit room when JOHN grabbed him, threw him down, and held him down while trying to hold his legs. JOHN then climbed on top of ARONOV and would not let him up. JOHN yelled "give it to the King, open your legs don't lock your legs! I'll rape you like in jail."

231.    JOHN did the same thing to Plaintiff CARDENAS in SZUMILO's presence, which also included JOHN's trying to kiss her and threatening to rape her.

232.    When a new female Sergeant was assigned to the command, JOHN said to SZUMILO "I want to fuck her. I'm going to fuck her."

233.    JOHN also showed SZUMILO pictures of his penis which was often done in front of other officers.

234.    On October 10, 2013 while SZUMILO was in the Conditions office with Officer Glinski, JOHN entered and began showing SZUMILO nude photos of his girlfriends and pictures of his penis.

235.    On November 6, 2013 while at a funeral detail for an NYPD officer which was attended by many high-ranking NYPD officers, JOHN grabbed and squeezed SZUMILO's groin area. SZUMILO told him to stop and said that he would go talk to the Chief. JOHN just laughed and responded "Nigga, I'm the King. You think the Chief is going to believe a cop or a sergeant? They can't do anything to me because I'm retiring soon."

236.    In November 2013 SZUMILO was in the car with JOHN and two other police officers with JOHN in the front passenger seat. JOHN showed SZUMILO and the others photos on his phone – one of his penis in ARONOV's lunch and another of his penis next to CARDENAS's head.

237.    On November 18, 2013 there was a shooting involving police and all the officers that had responded to the shooting were being subjected to G.O.15 interviews. As a result, there were IAB officers as well as other high ranking officers in the precinct. JOHN set fire to a few wanted posters and when other sergeants began yelling at him,

JOHN stated that he did not "give a fuck who is in the Precinct." ARONOV was also present for this incident.

238.    JOHN embarrassed and humiliated SZUMILO and other male officers by making them watch as he showed CARDENAS and other females photos of his penis.

239.    On December 13, 2013 while inside a 7-11, JOHN grabbed SZUMILO's butt while he was pouring coffee. Plaintiffs CARDENAS and several civilians saw it. When SZUMILO told JOHN to stop touching his private parts because he does not like it and is not gay, JOHN responded "how do you know I don't like it? How do you know I'm not gay?"

240.    On December 16, 2013, JOHN grabbed the black female cleaning-woman in the precinct; he smacked her butt and kissed her on the lips. Then, more recently he did the same thing to CARDENAS – in front of other police officers.

241.    Also during December 2013, JOHN said "I'm going to bust all over your face" while making a motion of himself ejaculating towards CARDENAS.

242.    Further, JOHN often pulls his pants down in front of SZUMILO. JOHN often sleeps in the office with his belt undone, and will then pull his pants down, grab his groin and says to CARDENAS  "Ann, hold this for me" and will even do this in front of other officers. He would also put his hand in his pants and touch Plaintiffs' faces with the sweat from his private parts.

243.    On December 21, 3013 the 83rd Precinct held a kids Christmas party. SZUMILO brought his son and JOHN brought his. SZUMILO was putting his son into the ESU truck when JOHN came up behind him and grabbed his butt and said "hey Pete, have you

been working out?" SZUMILO was very embarrassed and shocked that JOHN would do that in front of SZUMILO's son as well as other officers and their families.

244.    On December 31, 2013, JOHN grabbed SZUMILO's groin and squeezed it, to which SZUMILO became extremely agitated and upset, pushed him away and told him to cut it out.

245.    JOHN will often grab CARDENAS and push her against the wall and grind his body against hers and make grunting sounds. He would touch her thighs and then smell his finger.

246.    On one occasion, in front of SZUMILO, JOHN even pinned CARDENAS as she was searching a vehicle and said "oh yea you like this…let me grab that muffin." CARDENAS tried to escape from his grasp and turned around at which point he grabbed her breast and put his open mouth on her neck and cheeks. This incident was photographed. JOHN also pinned SZUMILO in the same manner.

247.    JOHN has had prior complaints lodged against him, yet the NYPD has failed to take any action. After an officer he was dating broke up with him, he got upset and when JOHN suspected she began dating a different officer JOHN approached that officer and asked "How do I taste?"

248.    Also, two black officers complained that JOHN called them each "nigger." This incident was even reported in the newspaper, yet, JOHN never faced any disciplinary action.

249.    On paydays, JOHN would walk around the precinct with his pay stub and make fun of officer who made less money than him. JOHN would say "three months ago I was

where you are at now" and would add that he makes great money providing security to a Russian-owned lounge in Queens.

250.        JOHN was once accused of getting his cars fixed for free at a mechanic shop owned by an 83rd Precinct auxiliary police officer. JOHN believed that this accusation had been made by Officer Haber, who JOHN had recently had transferred from the Conditions team. JOHN went around the precinct asking people for naked pictures of Officer Haber so that he could humiliate him.

251.        As part of their duties on the Conditions team Plaintiffs were required to perform prostitution sweeps. On many occasions during those sweeps they arrested transvestite prostitutes. While Plaintiffs would be fingerprinting the transvestite arrestees, JOHN would take pictures of them and call them "faggots" because they were touching the "he-shes." JOHN would also edit the pictures he took by drawing on them and would send the edited pictures to officers or show to people in the precinct. On one occasion when the team had arrested an attractive transvestite JOHN stated "This one I would definitely let suck my cock." When officers in precinct looked at him with disbelief JOHN said "What? A wet mouth is a wet mouth."

252.        Even at his own mother's wake following her passing JOHN made inappropriate sexual comments about the females in attendance.

253.        On many occasions JOHN told other supervisors that he had begun taking Viagra because he could no longer "get it up."

254.        For the last several months prior to his retirement, especially in November and December of 2013, JOHN showed complete irreverence for his fellow officers and his supervisors. JOHN brought his dog to the station house, rode his motorcycle inside the

station house, called into the Desk and said "This is the King." He even brought a fake crown and wore it around the station house.

255.    JOHN also repeatedly parked his unregistered vehicles in the NYPD lot and virtually abandoned them for over a year despite the fact that there are few spots. JOHN had several vehicles in the precinct parking lot at a time, including one with plates that did not match the car. One vehicle was taking up a spot in the area specifically designated for police officers, until it was finally rolled by officers from that area to a corner of the lot where it sits to present. JOHN also had an inoperable vehicle taking up a spot in the sergeants' designated area for over a year.

256.    At one point JOHN was storing three cars in the 83rd Precinct parking lot. When SZUMILO asked him "Why don't you give one of the cars to your son?" JOHN replied "I don't even know if he's mine, he acts like his dumb mother and he should be happy with the pair of sneakers I get him once in a while."

257.    JOHN called Sergeant Bin-Safar and Defendant LIEUTENANT AKHTER "sand niggers" to their faces by the desk and also said "10 years ago when I was a sergeant they were both working in 7-11 and saying 'thank you, come again.'" JOHN also told Bin-Safar that when he (JOHN) was a sergeant, Bin-Safar was "still riding zebras in Africa." This was also said by the desk.

258.    JOHN also said to Sergeant Bin-Safar that he (Bin-Safar) was "there for Black Hawk Down shooting Americans" and now he's a sergeant. Bin-Safar responded by saying that JOHN was "a bully" and that everyone was afraid of him because he was loud and has 20 years on the job.

259.     JOHN also Googled 'slavery dolls' and found a picture which he showed to Bin-Safar and asked him if he played with those when he was a child.

260.     JOHN went into another sergeant's locker and took his duty pants. JOHN boasted that he had stolen them from a fellow sergeant.

261.     Also, JOHN once pulled his pants down by the desk and picked up another sergeant's phone with his butt cheeks as it was charging on the desk. The sergeant was obviously repulsed.

262.     On one occasion, when Sergeant Serrano fainted in the precinct, JOHN laughed and said "I should go smack her with my dick like I used to and she will wake up right away."

263.     In December 2013 when JOHN found out that SZUMILO had passed the sergeant's exam he said to SZUMILO, on three separate occasions, "that's cute, you think you're going to be a sergeant? Right before you get promoted I'm going to make an allegation against you and that will hold you for a year or two."

264.     JOHN also said that SZUMILO was a "dumb immigrant" and was going to take a position that should be given to someone born in America. JOHN said that SZUMILO "should not even be on this job" and now was "going to take a supervisor's spot."

265.     JOHN also threatened SZUMILO saying "if you don't give me the attention the King deserves…."

266.     During his last visit to the precinct prior to his retirement, JOHN was emptying his locker and took another sergeant's equipment bag, dumped its contents out on the floor and began to pack his belongings from his locker into the bag. JOHN was

confronted about it on his way out and ultimately gave the sergeant his bag back but continued to brag about it on his way out.

267.    Despite the overwhelming evidence against JOHN and the constant harassment SZUMILO endured at his hands, Defendants looked the other way and did nothing to remedy the discrimination and harassment.

268.    Defendant AKHTAR once told JOHN to stop the sexual innuendo and that JOHN was making everyone uncomfortable. However, upon information and belief neither an official complaint was made nor an investigation conducted.

269.    Indeed, JOHN did not stop thereafter, and in fact, got worse.

270.    JOHN constantly threatens anyone who wants to file a complaint against him or have the audacity to transfer out of his unit.

271.    In the spring of 2013, an NYPD officer who used to work for JOHN and who JOHN had told his subordinates had made an EEO complaint against him, was involved in a murder/suicide. JOHN told SZUMILO and the other team members "see that what happens to people who fuck with me." JOHN further stated "1 down 1 to go" referencing the deceased officer's partner who had also made an EEO complaint against JOHN. JOHN also said "fuck with me and you get 'Smikled,'" again referring to the officer who killed himself.

272.    Any time SZUMILO requested time off his requests were torn up.

273.    Anytime SZUMILO put in a transfer request, which must be approved by the Sergeant (i.e. Defendant JOHN), he tore the request up.

274.    And, when SZUMILO complained of his outrageous behavior, JOHN threatened him with punishment posts such as "walking a beat at midnight on Eastern Parkway" or

being thrown into "BCB" (Brooklyn Central Booking) or being put on "TS" (telephone switchboard).

275.     JOHN drew a penis squirting semen at photos of ARONOV, CARDENAS and SZUMILO on his Galaxy notebook and showed it to officers in the precinct.

276.     In December 2013 JOHN stated that he had had a great career abusing people and might even work beyond his twenty years because his friends and family are connected to Commissioner Bratton.

277.     JOHN even threatened to retire, "load up on HGH and go to Ann's [CARDENAS] house and rape her".

278.     On December 31, 2013 JOHN said that when he retired he would take steroids ("load up on HGH") and go to SZUMILO's ex-wife's house and rape her in the ass while SZUMILO's son watched. Previously, when SZUMILO had met his ex-wife by the precinct and SZUMILO returned to the car, JOHN said "no wonder she left you, you're too ugly for her; give her my number, she probably needs a big black cock in her life."

279.     SZUMILO witnessed the incident wherein Defendant COLON said to CARDENAS that he would rape her as well as the January 9, 2014 incidents with COLON talking about CARDENAS's buttocks and what he wished to do to it and her, and later physically grabbing her buttocks. SZUMILO was embarrassed and shocked but felt powerless, humiliated and ashamed.

280.     Much of the discrimination and harassment was done in front of the Integrity Control Officer, Defendant SERGEANT KING, but she did nothing and was even harassed by JOHN herself. JOHN has repeatedly slapped her buttocks and squeezed it right in full view of all of SZUMILO. Once, when KING was leaving to go home, JOHN

said "oh you're going home? Just wait for me in your car and I'll come and rape that white muffin."

281.    Even when JOHN left (on terminal retirement leave) his replacement Defendant SERGEANT MERCADO picked up where JOHN left off.

282.    On the first day MERCADO took over the Conditions team he called SZUMILO a "dumb Pollock" and also told the 'joke' about how Polish people tie their shoes by the desk, which included a full demonstration.

283.    Once COLON was driving MERCADO in the patrol car and parked side-by-side with the patrol car ARONOV was driving with SZUMILO in the front passenger seat and CARDENAS in the back when Defendant COLON said loudly "You got a perp in the back there (referring to CARDENAS)…oh its Ann – I want her…I want to suck her toes…I want to suck the toe cheese from between her toes." MERCADO merely laughed and did nothing.

284.    MERCADO disregarded any complaints of discrimination and harassment, even joking "Ann we should put a camera on you --- you're a walking OEEO Poster Board."

285.    Rather than address the situation with Defendant COLON appropriately, MERCADO threatened CARDENAS with being forced to work with Colon.

286.    And, the presence of SZUMILO and MERCADO (a supervisor) COLON said to CARDENAS "I want to lick your ass" to which MERCADO joked "I'll call EEO now for you Ann" and laughed inappropriately.

287.    Following SZUMILO's filing of an EEOC Charge and an internal OEEO complaint, he has been repeatedly retaliated against.

288.     Specifically, since that time other officers refuse to speak to SZUMILO, supervisors also refuse to greet him and give him the "cold shoulder." Supervisors also refuse to sign-off on any arrest paperwork, preventing SZUMILO from performing his duties.

289.     In addition, supervisors have threatened that SZUMILO will lose his special unit assignment (Conditions Unit).

290.     Defendant MERCADO told SZUMILO that Plaintiffs ARONOV and CARDENAS (who also filed EEOC and EEO complaints) would soon be off the team, without giving any explanation as to why.

291.     Also, SZUMILO was told by Sergeant Bin-Safar on two separate occasions that he should not "hang around" with Plaintiffs ARONOV and CARDENAS since it will make SZUMILO look bad and that "it's people on the inside that can hurt you and you have a lot to lose." SZUMILO had recently passed the sergeant's exam and is thus waiting to be promoted to sergeant. Obviously, SZUMILO was being threatened that he would not be promoted in retaliation for having lodged a complaint of discrimination.

292.     As SZUMILO was leaving one day, Sergeant Bin-Safar followed him and in the back of precinct parking lot told SZUMILO that his team (referring to Plaintiffs) "better be on point with everything from now on," and that they "are being watched at all times." He added that this is what Plaintiffs "get for bringing attention to precinct" and themselves.

293.     On another occasion Bin-Safar told SZUMILO that if he wants to get promoted he should leave conditions unit and go to midnight patrol where SZUMILO would have less chances getting in trouble and not getting promoted.

294.     Upon information and belief, these comments were made to intimidate SZUMILO and make him feel as if he had done something wrong for lodging complaints of discrimination.

295.     SZUMILO has been repeatedly threatened that he will not be promoted because he lodged complaints.

296.     As a result of the discriminatory and retaliatory treatment, Plaintiff SZUMILO has suffered severe and extreme physical, mental and emotional damages, including but not limited to stress, weight gain, and loss of sleep among other damages and injuries.

**FACTUAL BACKGROUND RELATING TO PLAINTIFF JOHN TALAVERA**

297.     Plaintiff JOHN TALAVERA is a Hispanic male of Puerto Rican descent. He was appointed to the NYPD on July 2007.

298.     Beginning in approximately January 2013 TALAVERA has been subjected to physical and verbal sexual harassment at the hands of Defendant SERGEANT DAVID JOHN, his immediate supervisor. TALAVERA has been forced to suffer an outrageous hostile work environment wherein Defendant JOHN routinely abuses the minorities in the Unit, such as TALAVERA. Since January 2013 TALAVERA has been assigned to the "Conditions Unit."

299.     Defendant JOHN repeatedly called TALAVERA "homosexual," "faggot," "Mexican," "greasy," "child molester," and "pedophile."

300.     JOHN would also pull TALAVERA's hair and say "you look like a pedophile." This was done both in the car and in the precinct.

301.     When Avonte Oquindo, an autistic boy, went missing in New York City, JOHN said to TALAVERA "We know you have that kid tied up in your attic."

302.    JOHN also said to TALAVERA "you fit in with the rest of the assholes in the neighborhood." He also said that TALAVERA "fits in with the crack heads" because he "looks like a Mexican crack head."

303.    Once while TALAVERA was doing enforcement for fencing, his girlfriend happened to be in the neighborhood. Upon learning that she was his girlfriend, JOHN said to TALAVERA "your girl is checking me out, she wants me." He continued to say "I'd fucking take her, she will want me, you don't even have a car."

304.    On many occasions, JOHN would put his fist up to TALAVERA's cheek and threateningly say "I could kill you."

305.    JOHN would also say "if I was raping your girlfriend you couldn't do anything."

306.    JOHN would ask officers "how much [money] to watch your mom get pounded by a black guy?" JOHN would also ask officers to choose either their mother or their wife to be raped.

307.    On multiple occasions in November and December of 2013, JOHN came up from behind and lifted TALAVERA up with his fist from TALAVERA's groin area.

308.    JOHN constantly grabbed TALAVERA's butt and groin area. TALAVERA always pushed him away.

309.    JOHN constantly greeted other male officers at the front desk with "What's up … get your dick sucked?"

310.    And, while driving JOHN would comment on every female he saw and stated 50-70 times a day "I want to get my dick sucked," "Can I smell your muffin?" and "I'll beat that ass up."

311.     JOHN repeatedly licked his index finger and would stick it in TALAVERA's ear while he was driving JOHN.

312.     JOHN would also repeatedly rub and caress TALAVERA's thigh while he was driving JOHN and was unable to fight back.

313.     In the "Anti-Crime" room within the 83rd Precinct station house and while in the squad car JOHN would constantly put his Galaxy notebook or phone on and watch "x-video.com" a pornography website.

314.     JOHN would often turn to Plaintiff CARDENAS and repeatedly groan or moan and say "Ann, don't you wish you could get pounded out like that?"

315.     JOHN often showed personal videos of himself having sex.

316.     JOHN would order TALAVERA and the other team members to get "dressed up" in plainclothes and go out to sell stolen cell phones. This was a clear violation of NYPD rules and regulations which require an officer to be "plain clothes qualified" which Plaintiffs were not. This was particularly dangerous because TALAVERA did not speak Spanish and so he could easily have blown his cover.

317.     In the summer of 2013, while TALAVERA was in the anti-crime room, Plaintiff ARONOV was sitting on the couch in the conditions unit room when JOHN grabbed him, threw him down, and held him down while trying to hold his legs.  JOHN then climbed on top of ARONOV and would not let him up. JOHN yelled "give it to the King, open your legs don't lock your legs! I'll rape you like in jail".

318.     JOHN did the same thing to Plaintiff CARDENAS in TALAVERA's presence, which also included JOHN's trying to kiss her and threatening to rape her.

319.    When a new female Sergeant was assigned to the command, JOHN said to
TALAVERA "I want to fuck her. I'm going to fuck her."

320.    JOHN also showed TALAVERA pictures of his penis which was often done in
front of other officers.

321.    JOHN embarrassed and humiliated TALAVERA and other male officers by
making them watch as he showed CARDENAS and other females photos of his penis.

322.    On December 16, 2013, JOHN grabbed the black female cleaning-woman in the
precinct; he smacked her butt and kissed her on the lips. Then, more recently he did the
same thing to CARDENAS – in front of other police officers.

323.    Also during December 2013, JOHN said "I'm going to bust all over your face"
while making a motion of himself ejaculating towards CARDENAS.

324.    Further, JOHN often pulls his pants down in front of TALAVERA. JOHN often
sleeps in the office with his belt undone, and will then pull his pants down, grab his groin
and says to CARDENAS  "Ann, hold this for me" and will even do this in front of other
officers.

325.     On December 31, 2013, JOHN grabbed TALAVERA's groin and squeezed it, to
which TALAVERA told him to stop.

326.    JOHN will often grab CARDENAS and push her against the wall and grind his
body against hers and make grunting sounds.

327.    On one occasion, in front of TALAVERA, JOHN even pinned CARDENAS as
she was searching a vehicle and said "oh yea you like this…let me grab that muffin."
CARDENAS tried to escape from his grasp and turned around at which point he grabbed

her breast and put his open mouth on her neck and cheeks. This incident was photographed.

328.    JOHN has had prior complaints lodged against him, yet the NYPD has failed to take any action. After an officer he was dating broke up with him, he got upset and when JOHN suspected she began dating a different officer JOHN approached that officer and asked "How do I taste?"

329.    Also, two black officers complained that JOHN called them each "nigger." This incident was even reported in the newspaper, yet, JOHN never faced any disciplinary action.

330.    On paydays, JOHN would walk around the precinct with his pay stub and make fun of officer who made less money than him. JOHN would say "three months ago I was where you are at now" and would add that he makes great money providing security to a Russian-owned lounge in Queens.

331.    JOHN was once accused of getting his cars fixed for free at a mechanic shop owned by an 83rd Precinct auxiliary police officer. JOHN believed that this accusation had been made by Officer Haber, who JOHN had recently had transferred from the Conditions team. JOHN went around the precinct asking people for naked pictures of Officer Haber so that he could humiliate him.

332.    As part of their duties on the Conditions team Plaintiffs were required to perform prostitution sweeps. On many occasions during those sweeps they arrested transvestite prostitutes. While Plaintiffs would be fingerprinting the transvestite arrestees, JOHN would take pictures of them and call them "faggots" because they were touching the "he-shes." JOHN would also edit the pictures he took by drawing on them and would send the

edited pictures to officers or show to people in the precinct. On one occasion when the team had arrested an attractive transvestite JOHN stated "This one I would definitely let suck my cock." When officers in precinct looked at him with disbelief JOHN said "What? A wet mouth is a wet mouth."

333.    Even at his own mother's wake following her passing JOHN made inappropriate sexual comments about the females in attendance.

334.    For the last several months prior to his retirement, JOHN showed complete irreverence for his fellow officers and his supervisors. JOHN brought his dog to the station house, rode his motorcycle inside the station house, called into the Desk and said "This is the King". He even brought a fake crown and wore it around the station house.

335.    JOHN also repeatedly parked his unregistered unvouchered vehicles in the NYPD lot and virtually stored them for months despite the fact that there are few spots. In fact, they are being stored on department property to this day.

336.    Despite the overwhelming evidence against JOHN and the constant harassment TALAVERA endured at his hands, Defendants looked the other way and did nothing to remedy the discrimination and harassment.

337.    Defendant AKHTAR once told JOHN to stop the sexual innuendo and that JOHN was making everyone uncomfortable. However, upon information and belief neither an official complaint was made nor an investigation conducted.

338.    Indeed, JOHN did not stop thereafter, and in fact, got worse.

339.    JOHN constantly threatens anyone who wants to file a complaint against him or have the audacity to transfer out of his unit.

340.	In the spring of 2013, an NYPD officer who used to work for JOHN and who JOHN had told his subordinates had made an EEO complaint against him, was involved in a murder/suicide. JOHN told TALAVERA and the other team members "see that what happens to people who fuck with me." JOHN further stated "1 down 1 to go" referencing the deceased officer's partner who had also made an EEO complaint against JOHN.

341.	Any time TALAVERA requested time off his requests were torn up.

342.	In August 2013 TALAVERA requested a transfer out of Conditions Unit, even if it meant going back to patrol (a step backward with regard to career advancement), because of JOHN's harassment. JOHN denied his request stating that Lieutenant McCarthy had said no.

343.	And, when TALAVERA complained of his outrageous behavior, JOHN threatened him with punishment posts such as "walking a beat at midnight on Eastern Parkway" or being thrown into "BCB" (Brooklyn Central Booking) or being put on "TS" (telephone switchboard).

344.	JOHN drew a penis squirting semen at photos of ARONOV, CARDENAS and SZUMILO on his Galaxy notebook.

345.	JOHN even threatened to retire, "load up on HGH and go to Ann's [CARDENAS] house and rape her."

346.	Following TALAVERA's filing of an EEOC Charge and an internal OEEO complaint, he has been repeatedly retaliated against.

347.	Specifically, since that time other officers refuse to speak to TALAVERA, supervisors also refuse to greet him and give him the "cold shoulder."

348.     In addition, TALAVERA even changed his tour in an attempt to escape JOHN's harassment and discrimination.

349.     As a result of the discriminatory and retaliatory treatment, Plaintiff TALAVERA has suffered severe and extreme physical, mental and emotional damages, including but not limited to stress, weight loss, and loss of sleep among other damages and injuries.

**FACTUAL BACKGROUND RELATING TO PLAINTIFF GABRIEL VELEZ**

350.     Plaintiff GABRIEL VELEZ is a Hispanic male who was born and raised in Colombia and has a noticeable accent. He was appointed to the NYPD on January 23, 2007.

351.     Beginning in approximately January 2013 VELEZ has been subjected to physical and verbal sexual harassment at the hands of Defendant SERGEANT DAVID JOHN, his immediate supervisor. VELEZ has been forced to suffer an outrageous hostile work environment wherein Defendant JOHN routinely abuses the minorities in the Unit, especially those with an accent, such as VELEZ. Since January 2013 VELEZ has been assigned to the "Conditions Unit."

352.     Defendant JOHN repeatedly called VELEZ "taco," and "Mexican," both in the car and in the precinct.

353.     JOHN also said to VELEZ "your wife married you for the green card, wait two years she'll leave you, they're all whores."

354.     JOHN also threatened VELEZ by saying "when I retire I'm going back on steroids and coming back to rape your wife."

355.     JOHN would ask officers "how much [money] to watch your mom get pounded by a black guy?" JOHN would also ask officers to choose either their mother or their wife to be raped.

356.     On one occasion, when the team, including VELEZ and JOHN were in a 7-11 JOHN grabbed VELEZ's buttocks in front of two civilian women.

357.     JOHN also grabbed VELEZ's buttocks on a different day while VELEZ was in the process of making an arrest again in front of a civilian and most egregiously, a supervisor, who contrary to NYPD Patrol Guide Rules and Regulations, failed to make an OEEO report.

358.     On another occasion, while in the police car, JOHN took out a condom, blew it up and began stroking it.

359.     And, after making an arrest, JOHN took the magazine of bullets from his weapon and threw them in the car. JOHN then told Plaintiff CARDENAS "there's a gun in the car, go get it." When CARDENAS bent down to search the car, JOHN jumped on top of her and pinned her.

360.     JOHN constantly grabbed VELEZ's butt and groin area. VELEZ always pushed him away.

361.     JOHN constantly greeted other male officers at the front desk with "What's up … get your dick sucked?"

362.     And, while driving JOHN would comment on every female he saw and stated 50-70 times a day "I want to get my dick sucked" or "can I smell your muffin?"

363.     JOHN repeatedly licked his index finger and would stick it in VELEZ's ear while he was driving JOHN.

364.    JOHN would also repeatedly rub and caress VELEZ's thigh while he was driving JOHN and was unable to fight back.

365.    In the "Anti-Crime" room within the 83rd Precinct station house and while in the squad car JOHN would constantly put his Galaxy notebook or phone on and watch "x-video.com" a pornography website.

366.    JOHN would often turn to Plaintiff CARDENAS and repeatedly groan or moan and say "Ann, don't you wish you could get pounded out like that?"

367.    JOHN often showed personal videos of himself having sex.

368.    JOHN would order VELEZ and the other team members to get "dressed up" in plainclothes and go out to sell stolen cell phones. This was a clear violation of NYPD rules and regulations which require an officer to be "plain clothes qualified" which Plaintiffs were not.

369.    In the summer of 2013, while VELEZ was in the anti-crime room, Plaintiff ARONOV was sitting on the couch in the conditions unit room when JOHN grabbed him, threw him down, and held him down while trying to hold his legs.  JOHN then climbed on top of ARONOV and would not let him up. JOHN yelled "give it to the King, open your legs don't lock your legs! I'll rape you like in jail."

370.    JOHN did the same thing to Plaintiff CARDENAS in VELEZ's presence, which also included JOHN's trying to kiss her and threatening to rape her.

371.    When a new female Sergeant was assigned to the command, JOHN said to VELEZ "I want to fuck her. I'm going to fuck her."

372.    JOHN also showed VELEZ pictures of his penis which was often done in front of other officers.

373.	JOHN embarrassed and humiliated VELEZ and other male officers by making them watch as he showed CARDENAS and other females photos of his penis.

374.	On December 16, 2013, JOHN grabbed the black female cleaning-woman in the precinct; he smacked her butt and kissed her on the lips. Then, more recently he did the same thing to CARDENAS – in front of other police officers.

375.	Also during December 2013, JOHN said "I'm going to bust all over your face" while making a motion of himself ejaculating towards CARDENAS.

376.	Further, JOHN often pulls his pants down in front of VELEZ. JOHN often sleeps in the office with his belt undone, and will then pull his pants down, grab his groin and says to CARDENAS  "Ann, hold this for me" and will even do this in front of other officers.

377.	 On December 31, 2013, JOHN grabbed VELEZ's groin and squeezed it, to which VELEZ told him to stop.

378.	JOHN will often grab CARDENAS and push her against the wall and grind his body against hers and make grunting sounds.

379.	On one occasion, in front of VELEZ, JOHN even pinned CARDENAS as she was searching a vehicle and said "oh yea you like this…let me grab that muffin." CARDENAS tried to escape from his grasp and turned around at which point he grabbed her breast and put his open mouth on her neck and cheeks. This incident was photographed.

380.	JOHN has had prior complaints lodged against him, yet the NYPD has failed to take any action. After an officer he was dating broke up with him, he got upset and when

JOHN suspected she began dating a different officer JOHN approached that officer and asked "How do I taste?"

381.    Also, two black officers complained that JOHN called them each "nigger." This incident was even reported in the newspaper, yet, JOHN never faced any disciplinary action.

382.    JOHN was once accused of getting his cars fixed for free at a mechanic shop owned by an 83rd Precinct auxiliary police officer. JOHN believed that this accusation had been made by Officer Haber, who JOHN had recently had transferred from the Conditions team. JOHN went around the precinct asking people for naked pictures of Officer Haber so that he could humiliate him.

383.    As part of their duties on the Conditions team Plaintiffs were required to perform prostitution sweeps. On many occasions during those sweeps they arrested transvestite prostitutes. While Plaintiffs would be fingerprinting the transvestite arrestees, JOHN would take pictures of them and call them "faggots" because they were touching the "he-shes." JOHN would also edit the pictures he took by drawing on them and would send the edited pictures to officers or show to people in the precinct. On one occasion when the team had arrested an attractive transvestite JOHN stated "This one I would definitely let suck my cock." When officers in precinct looked at him with disbelief JOHN said "What? A wet mouth is a wet mouth."

384.    Even at his own mother's wake following her passing JOHN made inappropriate sexual comments about the females in attendance.

385.    On paydays, JOHN would walk around the precinct with his pay stub and make fun of officer who made less money than him. JOHN would say "three months ago I was

where you are at now" and would add that he makes great money providing security to a Russian-owned lounge in Queens.

386.     For the last several months prior to his retirement, JOHN showed complete irreverence for his fellow officers and his supervisors. JOHN brought his dog to the station house, rode his motorcycle inside the station house, called into the Desk and said "This is the King". He even brought a fake crown and wore it around the station house.

387.     JOHN also repeatedly parked his unregistered unvouchered vehicles in the NYPD lot and virtually stored them for months despite the fact that there are few spots. In fact, they are being stored on department property to this day.

388.     Despite the overwhelming evidence against JOHN and the constant harassment VELEZ endured at his hands, Defendants looked the other way and did nothing to remedy the discrimination and harassment.

389.     Defendant AKHTAR once told JOHN to stop the sexual innuendo and that JOHN was making everyone uncomfortable. However, upon information and belief neither an official complaint was made nor an investigation conducted.

390.     Indeed, JOHN did not stop thereafter, and in fact, got worse.

391.     JOHN constantly threatens anyone who wants to file a complaint against him or have the audacity to transfer out of his unit.

392.     In the spring of 2013, an NYPD officer who used to work for JOHN and who JOHN had told his subordinates had made an EEO complaint against him, was involved in a murder/suicide. JOHN told VELEZ and the other team members "see that what happens to people who fuck with me." JOHN further stated "1 down 1 to go" referencing the deceased officer's VELEZ who had also made an EEO complaint against JOHN.

393.     Any time VELEZ requested time off his requests were torn up.

394.     In August 2013 VELEZ requested a transfer out of Conditions Unit, even if it meant going back to patrol (a step backward with regard to career advancement), because of JOHN's harassment. JOHN denied his request stating that Lieutenant McCarthy had said no

395.     And, when VELEZ complained of his outrageous behavior, JOHN threatened him with punishment posts such as "walking a beat at midnight on Eastern Parkway" or being thrown into "BCB" (Brooklyn Central Booking) or being put on "TS" (telephone switchboard).

396.     JOHN drew a penis squirting semen at photos of ARONOV, CARDENAS and SZUMILO on his Galaxy notebook.

397.     JOHN even threatened to retire, "load up on HGH and go to Ann's [CARDENAS] house and rape her".

398.     JOHN showed VELEZ the before and after photos of his wife's breast surgery.

399.     Following VELEZ's filing of an EEOC Charge and an internal OEEO complaint, he has been repeatedly retaliated against.

400.     Specifically, since that time other officers refuse to speak to VELEZ, supervisors also refuse to greet him and give him the "cold shoulder."

401.     In addition, VELEZ even changed his tour in an attempt to escape JOHN's harassment and discrimination.

402.     As a result of the discriminatory and retaliatory treatment, Plaintiff VELEZ has suffered severe and extreme physical, mental and emotional damages, including but not limited to stress, weight loss, and loss of sleep among other damages and injuries.

## VIOLATIONS AND CLAIMS ALLEGED

### COUNT I
### RACE DISCRIMINATION IN VIOLATION OF
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

403.    Plaintiffs re-allege paragraphs 1 through 402 and incorporate them by reference as paragraphs 1 through 402 of Count I of this Complaint.

404.    Plaintiffs allege that Defendant CITY through its agents engaged in a pattern and practice of discrimination against them with respect to the terms, conditions and privileges of employment because of the plaintiffs' race in violation of 42 U.S.C. § 2000e-2.

405.    As a result of the acts of Defendants' under color of law, Plaintiffs suffered emotional distress, humiliation and embarrassment, medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

### COUNT II
### GENDER DISCRIMINATION IN VIOLATION OF
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

406.    Plaintiffs re-allege paragraphs 1 through 405 and incorporate them by reference as paragraphs 1 through 405 of Count II of this Complaint.

407.    Plaintiffs allege that Defendant CITY through its agents engaged in a pattern and practice of discrimination against them with respect to the terms, conditions and privileges of employment because of the plaintiffs' gender in violation of 42 U.S.C. § 2000e-2.

408.    As a result of the acts of Defendants' under color of law, Plaintiffs suffered emotional distress, humiliation and embarrassment, medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

## COUNT III
## NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

409.     Plaintiffs re-allege paragraphs 1 through 408 and incorporate them by reference as paragraphs 1 through 408 of Count III of this Complaint.

410.     Plaintiffs allege that Defendant CITY through its agents engaged in a pattern and practice of discrimination against them with respect to the terms, conditions and privileges of employment because of the plaintiffs' national origin in violation of 42 U.S.C. § 2000e-2.

411.     As a result of the acts of Defendants' under color of law, Plaintiffs suffered emotional distress, humiliation and embarrassment, medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

## COUNT IV
## ETHNICITY DISCRIMINATION IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

412.     Plaintiffs re-allege paragraphs 1 through 411 and incorporate them by reference as paragraphs 1 through 411 of Count IV of this Complaint.

413.     Plaintiffs allege that Defendant CITY through its agents engaged in a pattern and practice of discrimination against them with respect to the terms, conditions and privileges of employment because of the plaintiffs' ethnicity in violation of 42 U.S.C. § 2000e-2.

414.     As a result of the acts of Defendants' under color of law, Plaintiffs suffered emotional distress, humiliation and embarrassment, medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

## COUNT V
## RELIGION DISCRIMINATION IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

415.     Plaintiffs re-allege paragraphs 1 through 414 and incorporate them by reference as

paragraphs 1 through 414 of Count V of this Complaint.

416.     Plaintiffs allege that Defendant CITY through its agents engaged in a pattern and

practice of discrimination against them with respect to the terms, conditions and

privileges of employment because of the plaintiffs' religion in violation of 42 U.S.C. §

2000e-2.

417.     As a result of the acts of Defendants' under color of law, Plaintiffs suffered

emotional distress, humiliation and embarrassment, medical and legal expenses, and out

of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.


## COUNT VI
## RETALIATION IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

418.     Plaintiffs re-allege paragraphs 1 through 417 and incorporate them by reference as

paragraphs 1 through 417 of Count VI of this Complaint.

419.     Plaintiffs allege that Defendant CITY through its agents engaged in various

retaliatory actions against Plaintiffs as a result of their opposition to race, gender, national

origin, ethnicity and religion discrimination and as a result of their filing such complaints

with Defendants and the EEOC, in violation of 42 U.S.C. § 2000e-3(a).

420.     That as a result of the illegal acts of Defendant CITY through its agents, Plaintiffs

suffered depression and anxiety.

## COUNT VII
### HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

421.    Plaintiffs re-allege paragraphs 1 through 420 and incorporate them by reference as paragraphs 1 through 420 of Count VII of this Complaint.

422.    Plaintiffs allege that Defendant CITY through its agents engaged in various severe and hostile actions towards Plaintiffs as a result of their opposition to race, gender, national origin, ethnicity and religion discrimination and as a result of their filing such complaints with the New York City Police Department and the EEOC.

423.    That as a result of the severe and hostile acts of the Defendant CITY through its agents, plaintiffs suffered depression, anxiety and loss of job opportunities.

## COUNT VIII
### RACE DISCRIMINATION IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

424.    Plaintiffs re-allege paragraphs 1 through 423 and incorporate them by reference as paragraphs 1 through 423 of Count VIII of this Complaint.

425.    Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, under color of law, personally interfered with and deprived plaintiffs of their constitutional rights, including the rights: to enjoy freedom of speech, to petition their government for redress of their grievances, to be secure in their person, to enjoy privacy, to be free from deprivation of life, liberty, and property without due process of law.

426.    Defendants SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON,

acting individually and in their official capacities as a public official of defendant CITY under color of law, and having been fully advised that plaintiffs were being deprived of their constitutional rights, either acted in a concerted, malicious intentional pattern to further discriminate against plaintiffs, or knowing such discrimination was taking place, knowingly omitted to act to protect plaintiffs from continuing deprivations of their rights to enjoy freedom of speech, to petition their government for redress of their grievances, to be secure in their person, to enjoy privacy, to be free from deprivation of life, liberty, and property without due process of law, all in violation of 42 U.S.C. § 1983.

427.      Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON,  in acting to deprive plaintiffs' rights, acted intentionally, knowingly, willfully, and with gross disregard of plaintiffs' rights.

428.      As a result of the acts of the Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, under color of law, plaintiffs suffered emotional distress, monetary damage, and incurred medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

## COUNT IX
## GENDER DISCRIMINATION IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

429.      Plaintiffs re-allege paragraphs 1 through 428 and incorporate them by reference as paragraphs 1 through 428 of Count IX of this Complaint.

430.      Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and

P.O. ANGEL COLON, under color of law, personally interfered with and deprived plaintiffs of their constitutional rights, including the rights: to enjoy freedom of speech, to petition their government for redress of their grievances, to be secure in their person, to enjoy privacy, to be free from deprivation of life, liberty, and property without due process of law.

431.     Defendants SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, acting individually and in their official capacities as a public official of defendant CITY under color of law, and having been fully advised that plaintiffs were being deprived of their constitutional rights, either acted in a concerted, malicious intentional pattern to further discriminate against plaintiffs, or knowing such discrimination was taking place, knowingly omitted to act to protect plaintiffs from continuing deprivations of their rights to enjoy freedom of speech, to petition their government for redress of their grievances, to be secure in their person, to enjoy privacy, to be free from deprivation of life, liberty, and property without due process of law, all in violation of 42 U.S.C. § 1983.

432.     Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON,  in acting to deprive plaintiffs' rights, acted intentionally, knowingly, willfully, and with gross disregard of plaintiffs' rights.

433.     As a result of the acts of the Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, under color of law, plaintiffs suffered emotional distress, monetary damage, and incurred medical and legal expenses, and out

of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

## COUNT X
## NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

434.     Plaintiffs re-allege paragraphs 1 through 433 and incorporate them by reference as paragraphs 1 through 433 of Count X of this Complaint.

435.     Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, under color of law, personally interfered with and deprived plaintiffs of their constitutional rights, including the rights: to enjoy freedom of speech, to petition their government for redress of their grievances, to be secure in their person, to enjoy privacy, to be free from deprivation of life, liberty, and property without due process of law.

436.     Defendants SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, acting individually and in their official capacities as a public official of defendant CITY under color of law, and having been fully advised that plaintiffs were being deprived of their constitutional rights, either acted in a concerted, malicious intentional pattern to further discriminate against plaintiffs, or knowing such discrimination was taking place, knowingly omitted to act to protect plaintiffs from continuing deprivations of their rights to enjoy freedom of speech, to petition their government for redress of their grievances, to be secure in their person, to enjoy privacy, to be free from deprivation of life, liberty, and property without due process of law, all in violation of 42 U.S.C. § 1983.

437.     Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN,

LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, in acting to deprive plaintiffs' rights, acted intentionally, knowingly, willfully, and with gross disregard of plaintiffs' rights.

438.    As a result of the acts of the Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, under color of law, plaintiffs suffered emotional distress, monetary damage, and incurred medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

## COUNT XI
### ETHNICITY DISCRIMINATION IN VIOLATION OF
### THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

439.    Plaintiffs re-allege paragraphs 1 through 438 and incorporate them by reference as paragraphs 1 through 438 of Count XI of this Complaint.

440.    Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, under color of law, personally interfered with and deprived plaintiffs of their constitutional rights, including the rights: to enjoy freedom of speech, to petition their government for redress of their grievances, to be secure in their person, to enjoy privacy, to be free from deprivation of life, liberty, and property without due process of law.

441.    Defendants SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, acting individually and in their official capacities as a public official of defendant CITY

70

under color of law, and having been fully advised that plaintiffs were being deprived of their constitutional rights, either acted in a concerted, malicious intentional pattern to further discriminate against plaintiffs, or knowing such discrimination was taking place, knowingly omitted to act to protect plaintiffs from continuing deprivations of their rights to enjoy freedom of speech, to petition their government for redress of their grievances, to be secure in their person, to enjoy privacy, to be free from deprivation of life, liberty, and property without due process of law, all in violation of 42 U.S.C. § 1983.

442.    Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON,  in acting to deprive plaintiffs' rights, acted intentionally, knowingly, willfully, and with gross disregard of plaintiffs' rights.

443.    As a result of the acts of the Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, under color of law, plaintiffs suffered emotional distress, monetary damage, and incurred medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

**COUNT XII**
**RELIGION DISCRIMINATION IN VIOLATION OF**
**THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983**

444.    Plaintiffs re-allege paragraphs 1 through 443 and incorporate them by reference as paragraphs 1 through 443 of Count XII of this Complaint.

445.    Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, under color of law, personally interfered with and deprived

plaintiffs of their constitutional rights, including the rights: to enjoy freedom of speech, to petition their government for redress of their grievances, to be secure in their person, to enjoy privacy, to be free from deprivation of life, liberty, and property without due process of law.

446.    Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON,  acting individually and in their official capacities as a public official of defendant CITY under color of law, and having been fully advised that plaintiffs were being deprived of their constitutional rights, either acted in a concerted, malicious intentional pattern to further discriminate against plaintiffs, or knowing such discrimination was taking place, knowingly omitted to act to protect plaintiffs from continuing deprivations of their rights to enjoy freedom of speech, to petition their government for redress of their grievances, to be secure in their person, to enjoy privacy, to be free from deprivation of life, liberty, and property without due process of law, all in violation of 42 U.S.C. § 1983.

447.    Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON,  in acting to deprive plaintiffs' rights, acted intentionally, knowingly, willfully, and with gross disregard of plaintiffs' rights.

448.    As a result of the acts of the Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, under color of law, plaintiffs suffered emotional distress, monetary damage, and incurred medical and legal expenses, and out

of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

**COUNT XIII**
**RETALIATION IN VIOLATION OF**
**THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983**

449.    Plaintiffs re-allege paragraphs 1 through 448 and incorporate them by reference as paragraphs 1 through 448 of Count XIII of this Complaint.

450.    Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, under color of law, personally interfered with and deprived plaintiffs of their constitutional rights, including the rights: to enjoy freedom of speech, to petition their government for redress of their grievances, to be secure in their person, to enjoy privacy, to be free from deprivation of life, liberty, and property without due process of law.

451.    Defendants SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, acting individually and in their official capacities as a public official of defendant CITY under color of law, and having been fully advised that plaintiffs were being deprived of their constitutional rights, either acted in a concerted, malicious intentional pattern to further discriminate against plaintiffs, or knowing such discrimination was taking place, knowingly omitted to act to protect plaintiffs from continuing deprivations of their rights to enjoy freedom of speech, to petition their government for redress of their grievances, to be secure in their person, to enjoy privacy, to be free from deprivation of life, liberty, and property without due process of law, all in violation of 42 U.S.C. § 1983.

452.    Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN,

LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON,  in acting to deprive plaintiffs' rights, acted intentionally, knowingly, willfully, and with gross disregard of plaintiffs' rights.

453.    As a result of the acts of the Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, under color of law, plaintiffs suffered emotional distress, monetary damage, and incurred medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.


## COUNT XIV
## HOSTILE WORK ENVIRONMENT IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

454.    Plaintiffs re-allege paragraphs 1 through 453 and incorporate them by reference as paragraphs 1 through 453 of Count XIV of this Complaint.

455.    Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, under color of law, personally interfered with and deprived plaintiffs of their constitutional rights, including the rights: to enjoy freedom of speech, to petition their government for redress of their grievances, to be secure in their person, to enjoy privacy, to be free from deprivation of life, liberty, and property without due process of law.

456.    Defendants SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, acting individually and in their official capacities as a public official of defendant CITY

under color of law, and having been fully advised that plaintiffs were being deprived of their constitutional rights, either acted in a concerted, malicious intentional pattern to further discriminate against plaintiffs, or knowing such discrimination was taking place, knowingly omitted to act to protect plaintiffs from continuing deprivations of their rights to enjoy freedom of speech, to petition their government for redress of their grievances, to be secure in their person, to enjoy privacy, to be free from deprivation of life, liberty, and property without due process of law, all in violation of 42 U.S.C. § 1983.

457.     Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON,   in acting to deprive plaintiffs' rights, acted intentionally, knowingly, willfully, and with gross disregard of plaintiffs' rights.

458.     As a result of the acts of the Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, under color of law, plaintiffs suffered emotional distress, monetary damage, and incurred medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

## COUNT XV
## MONELL CLAIM PURSUANT TO 42 U.S.C. § 1983

459.     Plaintiffs re-allege paragraphs 1 through 458 and incorporate them by reference as paragraphs 1 through 458 of Count XV of this Complaint.

460.     Defendants' violations of Plaintiffs' constitutional rights while acting under color of law resulted from a Municipal custom, policy and practice, consistent with the holding in Monell v. Department of Social Services, 438 U.S. 658, 694 n.58, 98 S.Ct. 2037 n.58

(1978).

461.     The actions of Defendants, acting under color of state and local law, custom and usage, have deprived Plaintiffs and will deprive other minorities in the future of their rights, privileges and immunities under the laws and Constitution of the United States, and in particular, their right to be free from discrimination in employment based solely on race, gender, national origin, ethnicity, and religion and retaliation for exercising their First Amendment rights to free speech, freedom of association and the right to complain and whistle blow.

462.     By these actions, Defendants have jointly and severally deprived Plaintiffs of their rights under the Fourteen Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983.

463.     Defendant CITY OF NEW YORK failed to train its employees as to display a deliberate indifference to the constitutional rights to those within the City of New York.

464.     Defendant CITY OF NEW YORK knew or should have known of the constitutional violations by its employees but repeatedly failed to report and/or make any meaningful investigation into charges of constitutional violations by its employees, resulting in untold damages to minorities including plaintiffs herein.

465.     Specifically, Defendant CITY OF NEW YORK admitted in its position statement to the Equal Employment Opportunity Commission that Defendant SERGEANT JOHN was the subject of at least two other charges of discrimination, yet no action to prevent further discrimination and harassment was taken.

466.     Defendants have deprived plaintiffs of their civil, constitutional and statutory rights as a result of the unlawful discrimination, hostile work environment and retaliation

due to the practice and policy of failing to train employees regarding same and/or failing to investigate charges of same.

## COUNT XVI
### RACE DISCRIMINATION IN VIOLATION OF
### THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981

467.    Plaintiffs re-allege paragraphs 1 through 466 and incorporate them by reference as paragraphs 1 through 466 of Count XVI of this Complaint.

468.    That by the aforesaid discriminatory acts and omissions of CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, acting individually and in their official capacities as public officials of Defendant CITY interfered with plaintiffs' right to enforce contracts under the color of State Law.

469.    That the purpose of Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, in so acting was to prevent plaintiffs, through economic and psychological intimidation, from seeking the equal protection of the laws, and from enjoying the equal privileges and immunities of citizens under the Constitution and laws of the United States and the State of New York including but not limited to enjoy their right to freedom of speech, to petition their government for redress of their grievances, to enjoy privacy, and deprivation of life, liberty, and property without due process of law.

470.    Pursuant to their conduct, the Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, acted to deprive the plaintiffs of their civil

rights, by repeated and insidious acts of harassment, intimidation, bad faith and threat, all in violation of 42 U.S.C. § 1981.

471.     As a result of the aforesaid acts, depriving plaintiffs of their civil rights, plaintiffs suffered mental anguish, emotional distress, loss of employment opportunities, and other monetary damages.


## COUNT XVII
### RETALIATION IN VIOLATION OF
### THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981

472.     Plaintiffs re-allege paragraphs 1 through 471 and incorporate them by reference as paragraphs 1 through 471 of Count XVII of this Complaint.

473.     Plaintiffs allege that Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, acting individually and in their official capacities as public officials of Defendant CITY, engaged in various retaliatory actions against plaintiffs as a result of their opposition to race discrimination.

474.     That the purpose of Defendants acting individually and in their official capacities as public officials of defendant CITY, in so acting was to prevent plaintiffs, through economic and psychological intimidation, from seeking the equal protection of the laws, and from enjoying the equal privileges and immunities of citizens under the Constitution and laws of the United States and the State of New York.

475.     Pursuant to their conduct, the defendants acted to deprive the plaintiffs of their civil rights, by repeated and insidious acts of harassment, intimidation, bad faith and threat, all in violation of 42 U.S.C. § 1981.

476.    As a result of the aforesaid acts, depriving plaintiffs of their civil rights, plaintiffs

suffered mental anguish, emotional distress, loss of employment opportunities, and other

monetary damages.

## COUNT XVIII
### HOSTILE WORK ENVIRONMENT IN VIOLATION OF
### THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981

477.    Plaintiffs re-allege paragraphs 1 through 476 and incorporate them by reference as

paragraphs 1 through 476 of Count XVIII of this Complaint.

478.    Plaintiffs alleges that Defendants CITY OF NEW YORK, SERGEANT DAVID

JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA

KING, and P.O. ANGEL COLON, acting individually and in their official capacities as

public officials of Defendant CITY, engaged in various severe and hostile actions against

plaintiffs as a result of their opposition to race discrimination.

479.    That the purpose of CITY OF NEW YORK, SERGEANT DAVID JOHN,

LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and

P.O. ANGEL COLON, in so acting was to prevent plaintiffs, through economic and

psychological intimidation, from seeking the equal protection of the laws, and from

enjoying the equal privileges and immunities of citizens under the Constitution and laws

of the United States and the State of New York.

480.    Pursuant to their conduct, the defendants acted to deprive the plaintiffs of their

civil rights, by repeated and insidious acts of harassment, intimidation, bad faith and

threat, all in violation of 42 U.S.C. § 1981.

481.     As a result of the aforesaid acts, depriving plaintiffs of their civil rights, plaintiffs suffered mental anguish, emotional distress, loss of employment opportunities, and other monetary damages.

## COUNT XIX
## RACE DISCRIMINATION IN VIOLATION OF
## NEW YORK STATE EXECUTIVE LAW § 296

482.     Plaintiffs re-allege paragraphs 1 through 481 and incorporate them by reference as paragraphs 1 through 481 of Count XIX of this Complaint.

483.     Plaintiffs allege that New York State Executive Law §296, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment based upon race or for having made charges of same.

484.     Plaintiffs allege that based upon the foregoing, Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, discriminated against the Plaintiffs based on their race and for having made charges of same.

485.     Plaintiffs allege that as a direct and proximate result of the unlawful employment practices of Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, plaintiffs have suffered the indignity of race discrimination, and great humiliation.

486.     Plaintiffs allege that because of Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON's violations, Plaintiffs have been damaged.

## COUNT XX
## GENDER DISCRIMINATION IN VIOLATION OF
## NEW YORK STATE EXECUTIVE LAW § 296

487.      Plaintiffs re-allege paragraphs 1 through 486 and incorporate them by reference as

paragraphs 1 through 486 of Count XX of this Complaint.

488.      Plaintiffs allege that New York State Executive Law §296, makes it unlawful to

discriminate against any individual in the terms, conditions, or privileges of employment

based upon gender or for having made charges of same.

489.      Plaintiffs allege that based upon the foregoing, Defendants CITY OF NEW

YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT

MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, discriminated

against the Plaintiffs based on their gender and for having made charges of same.

490.      Plaintiffs allege that as a direct and proximate result of the unlawful employment

practices of Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN,

LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and

P.O. ANGEL COLON, plaintiffs have suffered the indignity of gender discrimination, and

great humiliation.

491.      Plaintiffs allege that because of Defendants CITY OF NEW YORK, SERGEANT

DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT

TARA KING, and P.O. ANGEL COLON's violations, Plaintiffs have been damaged.

## COUNT XXI
## NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF
## NEW YORK STATE EXECUTIVE LAW § 296

492.      Plaintiffs re-allege paragraphs 1 through 491 and incorporate them by reference as

paragraphs 1 through 491 of Count XXI of this Complaint.

493.     Plaintiffs allege that New York State Executive Law §296, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment based upon national origin or for having made charges of same.

494.     Plaintiffs allege that based upon the foregoing, Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, discriminated against the Plaintiffs based on their national origin and for having made charges of same.

495.     Plaintiffs allege that as a direct and proximate result of the unlawful employment practices of Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, plaintiffs have suffered the indignity of national origin discrimination, and great humiliation.

496.     Plaintiffs allege that because of Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON's violations, Plaintiffs have been damaged.

**COUNT XXII**
**ETHNICITY DISCRIMINATION IN VIOLATION OF**
**NEW YORK STATE EXECUTIVE LAW § 296**

497.     Plaintiffs re-allege paragraphs 1 through 496 and incorporate them by reference as paragraphs 1 through 496 of Count XXII of this Complaint.

498.     Plaintiffs allege that New York State Executive Law §296, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment based upon ethnicity or for having made charges of same.

499.     Plaintiffs allege that based upon the foregoing, Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, discriminated against the Plaintiffs based on their ethnicity and for having made charges of same.

500.     Plaintiffs allege that as a direct and proximate result of the unlawful employment practices of Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, plaintiffs have suffered the indignity of ethnicity discrimination, and great humiliation.

501.     Plaintiffs allege that because of Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON's violations, Plaintiffs have been damaged.

## COUNT XXIII
### RELIGION DISCRIMINATION IN VIOLATION OF
### NEW YORK STATE EXECUTIVE LAW § 296

502.     Plaintiffs re-allege paragraphs 1 through 501 and incorporate them by reference as paragraphs 1 through 501 of Count XXIII of this Complaint.

503.     Plaintiffs allege that New York State Executive Law §296, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment based upon religion or for having made charges of same.

504.     Plaintiffs allege that based upon the foregoing, Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, discriminated against the Plaintiffs based on their religion and for having made charges of same.

505.    Plaintiffs allege that as a direct and proximate result of the unlawful employment practices of Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, plaintiffs have suffered the indignity of religion discrimination, and great humiliation.

506.    Plaintiffs allege that because of Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON's violations, Plaintiffs have been damaged.

**COUNT XXIV**
**RETALIATION IN VIOLATION OF**
**NEW YORK STATE EXECUTIVE LAW § 296**

507.    Plaintiffs re-allege paragraphs 1 through 506 and incorporate them by reference as paragraphs 1 through 506 of Count XXIV of this Complaint.

508.    Plaintiffs allege that New York State Executive Law §296, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment based upon race, gender, national origin, ethnicity and religion and makes it illegal to retaliate for charging same.

509.    Plaintiffs allege that based upon the foregoing, CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON discriminated against the Plaintiffs based on race, gender, national origin, ethnicity and religion and in retaliation for charging same.

510.    Plaintiffs allege that as a direct and proximate result of the unlawful employment practices of Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN,

LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, plaintiffs have suffered the indignity of retaliation and great humiliation.

511.     Plaintiffs allege that because of CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON's violations, Plaintiffs have been damaged.

### COUNT XXV
### HOSTILE WORK ENVIRONMENT IN VIOLATION OF
### NEW YORK STATE EXECUTIVE LAW §296

512.     Plaintiffs re-allege paragraphs 1 through 511 and incorporate them by reference as paragraphs 1 through 511 of Count XXV of this Complaint.

513.     Plaintiffs allege that New York State Executive Law §296, makes it unlawful to create, condone and/or tolerate a hostile working environment based upon race, gender, national origin, ethnicity and religion harassment, and retaliation.

514.     Plaintiffs allege that based upon the foregoing, CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON created, condoned and tolerated a hostile working environment which negatively affected the terms and conditions of their employment.

515.     Plaintiffs allege that CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON created, condoned and tolerated a hostile working environment which caused Plaintiffs to sustain damages.

## COUNT XXVI
## RACE DISCRIMINATION IN VIOLATION OF
## NEW YORK CITY ADMINISTRATIVE CODE § 8-101 *et seq.*

516.    Plaintiffs re-allege paragraphs 1 through 515 and incorporate them by reference as paragraphs 1 through 515 of Count XXVI of this Complaint.

517.    Plaintiffs allege that New York City Administrative Code §8-101 *et seq.*, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment based upon race and makes it illegal to retaliate for charging same.

518.    Plaintiffs allege that based upon the foregoing, Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON discriminated against the Plaintiffs based upon their race and in retaliation for charging same.

519.    Plaintiffs allege that as a direct and proximate result of the unlawful employment practices of Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, Plaintiffs have suffered the indignity of race discrimination, retaliation and great humiliation.

520.    Plaintiffs allege that because of Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON's violations, Plaintiffs have been damaged.

## COUNT XXVII
## GENDER DISCRIMINATION IN VIOLATION OF
## NEW YORK CITY ADMINISTRATIVE CODE § 8-101 *et seq.*

521.    Plaintiffs re-allege paragraphs 1 through 520 and incorporate them by reference as paragraphs 1 through 520 of Count XXVII of this Complaint.

522.    Plaintiffs allege that New York City Administrative Code §8-101 *et seq.*, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment based upon gender and makes it illegal to retaliate for charging same.

523.    Plaintiffs allege that based upon the foregoing, Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON discriminated against the Plaintiff based upon their gender and in retaliation for charging same.

524.    Plaintiffs allege that as a direct and proximate result of the unlawful employment practices of Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, Plaintiffs have suffered the indignity of gender discrimination, retaliation and great humiliation.

525.    Plaintiffs allege that because of Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON's violations, Plaintiffs have been damaged.

## COUNT XXVIII
### NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF
### NEW YORK CITY ADMINISTRATIVE CODE § 8-101 *et seq.*

526.    Plaintiffs re-allege paragraphs 1 through 525 and incorporate them by reference as paragraphs 1 through 525 of Count XXVIII of this Complaint.

527.    Plaintiffs allege that New York City Administrative Code §8-101 *et seq.*, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment based upon national origin and makes it illegal to retaliate for charging same.

528.    Plaintiffs allege that based upon the foregoing, Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON discriminated against the Plaintiff based upon their national origin and in retaliation for charging same.

529.    Plaintiffs allege that as a direct and proximate result of the unlawful employment practices of Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, Plaintiffs have suffered the indignity of national origin discrimination, retaliation and great humiliation.

530.    Plaintiffs allege that because of Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON's violations, Plaintiffs have been damaged.

## COUNT XXIX
### ETHNICITY DISCRIMINATION IN VIOLATION OF
### NEW YORK CITY ADMINISTRATIVE CODE § 8-101 *et seq.*

531.    Plaintiffs re-allege paragraphs 1 through 530 and incorporate them by reference as paragraphs 1 through 530 of Count XXIX of this Complaint.

532.    Plaintiffs allege that New York City Administrative Code §8-101 *et seq.*, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment based upon ethnicity and makes it illegal to retaliate for charging same.

533.    Plaintiffs allege that based upon the foregoing, Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON discriminated against the Plaintiff based upon their ethnicity and in retaliation for charging same.

534.     Plaintiffs allege that as a direct and proximate result of the unlawful employment practices of Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, Plaintiffs have suffered the indignity of ethnicity discrimination, retaliation and great humiliation.

535.     Plaintiffs allege that because of Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON's violations, Plaintiffs have been damaged.

**COUNT XXX**
**RELIGION DISCRIMINATION IN VIOLATION OF**
**NEW YORK CITY ADMINISTRATIVE CODE § 8-101 *et seq*.**

536.     Plaintiffs re-allege paragraphs 1 through 535 and incorporate them by reference as paragraphs 1 through 535 of Count XXX of this Complaint.

537.     Plaintiffs allege that New York City Administrative Code §8-101 *et seq.*, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment based upon religion and makes it illegal to retaliate for charging same.

538.     Plaintiffs allege that based upon the foregoing, Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON discriminated against the Plaintiffs based upon their religion and in retaliation for charging same.

539.     Plaintiffs allege that as a direct and proximate result of the unlawful employment practices of Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and

P.O. ANGEL COLON, Plaintiffs have suffered the indignity of religion discrimination, retaliation and great humiliation.

540.    Plaintiffs allege that because of Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON's violations, Plaintiffs have been damaged.

<u>COUNT XXXI</u>
**RETALIATION IN VIOLATION OF**
**NEW YORK CITY ADMINISTRATIVE CODE §8-101 *et seq.***

541.    Plaintiffs re-allege paragraphs 1 through 540 and incorporate them by reference as paragraphs 1 through 540 of Count XXXI of this Complaint.

542.    Plaintiffs allege that New York City Administrative Code §8-101 *et seq.*, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment based upon race, gender, national origin, ethnicity and religion and makes it illegal to retaliate for charging same.

543.    Plaintiffs allege that based upon the foregoing, Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON discriminated against the Plaintiffs based upon their race, gender, national origin, ethnicity and religion and in retaliation for charging same.

544.    Plaintiffs allege that as a direct and proximate result of the unlawful employment practices of Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON, Plaintiffs have suffered the indignity of race, gender, national origin, ethnicity and religion discrimination, retaliation and great humiliation.

545.    Plaintiffs allege that because of Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON's violations, Plaintiffs have been damaged.

## COUNT XXXII
## HOSTILE WORK ENVIRONMENT IN VIOLATION OF
## NEW YORK CITY ADMINISTRATIVE CODE §8-101 *et seq.*

546.    Plaintiffs re-allege paragraphs 1 through 545 and incorporate them by reference as paragraphs 1 through 545 of Count XXXII of this Complaint.

547.    Plaintiffs allege that New York City Administrative Code §8-101 *et seq.*, makes it unlawful to create, condone or and/or tolerate a hostile working environment based upon race, gender, national origin, ethnicity and religion discrimination, and retaliation for charging same.

548.    Plaintiffs allege that based upon the foregoing, Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON created, condoned and/or tolerated a hostile working environment which negatively affected the terms and conditions of their employment.

549.    Plaintiffs allege that Defendants CITY OF NEW YORK, SERGEANT DAVID JOHN, LIEUTENANT AKHTAR, SERGEANT MERCADO, SERGEANT TARA KING, and P.O. ANGEL COLON's violations caused Plaintiffs to sustain damages.

## COUNT XXXIII
## ASSAULT

550.    Plaintiffs re-allege paragraphs 1 through 549 and incorporate them by reference as paragraphs 1 through 549 of Count XXXIII of this Complaint.

551.     That at all times and hereinafter mentioned Defendants SERGEANT DAVID JOHN and P.O. ANGEL COLON were acting within the scope of their employment for Defendant CITY OF NEW YORK.

552.     That at all times hereinafter relevant, Plaintiffs were lawfully within the confines of their place of business.

553.     Plaintiffs were willfully, wantonly, maliciously, and recklessly assaulted by Defendants SERGEANT DAVID JOHN and P.O. ANGEL COLON.

554.     That due to these assaults, Plaintiffs have suffered permanent physical and emotional damages.

555.     That Defendants SERGEANT DAVID JOHN and P.O. ANGEL COLON were within the scope of their employment at the time of the assaults.

556.     Because Defendants SERGEANT DAVID JOHN and P.O. ANGEL COLON were within the scope of their employment, Defendant CITY OF NEW YORK is liable for all damages as a result of Defendants' SERGEANT DAVID JOHN and P.O. ANGEL COLON assaults.

557.     These actions by the Defendants were a proximate cause of Plaintiffs' injuries.

558.     Solely by reason of the foregoing, the Plaintiffs have sustained damages.

### COUNT XXXIV
### BATTERY

559.     Plaintiff re-alleges paragraphs 1 through 558 and incorporates them by reference as paragraphs 1 through 558 of Count XXXIV of this Complaint.

560.     Plaintiffs were the victim of battery at the hands of Defendants SERGEANT DAVID JOHN and P.O. ANGEL COLON.

561.    Defendants SERGEANT DAVID JOHN and P.O. ANGEL COLON herein made bodily contact with Plaintiffs.

562.    Said contact was harmful or offensive.

563.    The Defendants herein intended to make said contact with Plaintiffs and without Plaintiffs' consent.

564.    That Defendants SERGEANT DAVID JOHN and P.O. ANGEL COLON were within the scope of their employment at the time of the batteries.

565.    Because Defendants SERGEANT DAVID JOHN and P.O. ANGEL COLON were within the scope of their employment, Defendant CITY OF NEW YORK is liable for all damages as a result of Defendants' SERGEANT DAVID JOHN and P.O. ANGEL COLON batteries.

566.    Said batteries were the proximate cause of Plaintiffs' injuries.

567.    Solely by reason of the foregoing, the Plaintiffs have sustained damages.


## JURY TRIAL

568.    Plaintiff demands a trial by jury of all issues in this action that are so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand compensatory and punitive damages from these Defendants jointly and severally, in an amount to be determined at trial, plus any available statutory remedies, both legal and equitable, and interests and costs.

Dated: November 26, 2014
         Lake Success, New York


                                        **CRONIN & BYCZEK, LLP**
                                        *Attorneys for Plaintiff*


BY:    _____
         Linda M.Cronin, Esq.
         1983 Marcus Avenue, Suite C-120
         Lake Success, New York 11042
         (516) 358-1700